MINNESOTA MUTUAL LIFE INSURANCE COMPANY, Appellant,

v.

Ethel C. MORSE, Executrix of the Estate of James K. Morse, et al., Appellees.

No. 8068.

Court of Civil Appeals of Texas, Texarkana.

Feb. 1, 1972.

Rehearing Denied Feb. 22, 1972.

Victor Hlavinka, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Winford L. Dunn, Jr., Smith, Stroud, McClerkin & Conway, Texarkana, Ark., for appellees.

DAVIS, Justice.

This is a suit to recover certain benefits under two group life insurance policies in the amount of Two Thousand Three and 08/100 ($2,003.08) Dollars due on a loan, and Five Thousand and No/100 ($5,000.00) Dollars life insurance, plus twelve per cent (12%) penalty, and a reasonable attorney's fee. Ethel C. Morse, Independent Executrix of the Last Will and Testament of James K. Morse, deceased, sued Defendant-Appellant, The Minnesota Mutual Life Insurance Company, for the benefits and insurance under the two group life insurance policies.

Prior to October 30, 1962, James K. Morse was an employee of the Red River Army Ordnance Depot. On October 29, 1962, he retired from such employment by reason of total disability. At all relevant times, he was a member of the Red River Employees' Federal Credit Union, hereinafter referred to as the Credit Union. At the time of his retirement, he had on deposit with the Credit Union the sum of Seven Hundred and No/100 ($700.00) Dollars. At that time he had an outstanding loan balance with the Credit Union in the sum of Three Hundred Forty-one and 76/100 ($341.76) Dollars. Under the terms of another group life insurance policy then maintained by the Credit Union, Cuna Mutual Insurance Society paid the Credit Union the sum of Three Hundred Forty-one and 76/100 ($341.76) Dollars.

On September 1, 1963, Appellant issued to the Credit Union its Group Credit Life Insurance Policies No. 4666–G and No. 4666–W. On September 1, 1963, Mr. Morse had on deposit in his Share Account at the Credit Union the sum of Seven Hundred Thirty-seven and 31/100 ($737.31) Dollars, which included accrued interest. At various times thereafter, and prior to Mr. Morse's death, the earned interest and

additional deposits that were made to his account amounted to Five Thousand and No/100 ($5,000.00) Dollars with the Credit Union. Prior to his death, Mr. Morse had borrowed from the Credit Union Two Thousand Three and 08/100 ($2,003.08) Dollars, which included principal and interest. Mr. Morse passed away November 17, 1967.

A Credit Union Claim Statement was offered in evidence in the agreed Statement of Facts which showed the date of birth of James K. Morse to be September 24, 1921. It showed the date of his death to be November 17, 1967. That would make him 46 years, 1 month and 24 days old at the time of his death. If Mr. Morse was insured at the time of his death, he would be entitled to the benefits of the loan that he had with the Credit Union, plus Five Thousand and No/100 ($5,000.00) Dollars life insurance.

There are some ambiguities in the group life policies. There is a provision in Group Life Policy No. 4666–W which reads as follows:

"Except when evidence of insurability is required, increases in amounts of insurance because of an increase in the members' ledger balance shall be the date of the increase provided the member is physically able to perform the usual duties of his livelihood; if not, the increase shall become effective on the first day following the ledger increase that he is physically able to perform the usual duties of his livelihood."

Group Insurance Policy No. 4666–G contains the following:

"All members under age seventy (70) who become indebted to the Credit Union subsequent to the date of this policy, and who are physically able to perform, or within a reasonable time may be expected to resume the usual duties of their livelihood, shall become eligible for insurance on the date of their indebtedness."

The group insurance policies also contain, et cetera, the following provisions:

"AMOUNT OF INSURANCE. Subject to a maximum of $5,000.00, the Amount of Insurance for an individual insured Member shall be determined by his age at the date the balance is credited to his account or the date of this policy, if later, as applied to the following table:

| Age of Member | Percentage of Insurable Balance Covered |
|---|---|
| Age 0 but under 6 months | 25% |
| Age 6 months but under 55 | 100% |
| * * * * * * * * * * | |
| Age 70 and over | 0%." |

APPLICATION FOR INSURANCE

"RED RIVER EMPLOYEES FEDERAL Credit Union and the Member named below hereby apply to The Minnesota Mutual Life Insurance Company for insurance on the life of the Member. The Amount of Insurance under such policy shall be determined by the lesser of $5,000 and the Member's Insurable Balance as determined by the terms of the policy of which this application is a part. It is understood and agreed that the Credit Union shall have full ownership and control of the policy except those rights specifically reserved in the Member. Proceeds shall be paid to the Credit Union for credit to the Member's account with the Credit Union except that if a written designation of beneficiary of life insurance proceeds is filed with the Credit Union, then for the benefit of such beneficiary." (Emp. added).

The group policies also contain "Incontestability Clauses," which read as follows:

"*Incontestability*

"The validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue, *and no statement made by any Member insured under the policy relating to his insurabil-* *ity shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such Member's lifetime,* nor unless it is contained in a written application signed by him." (Emp. added)

"Incontestability. This policy shall be incontestable two years from its date of issue."

At the time James K. Morse ceased to work for the Red River Ordnance Depot prior to October 30, 1962, it seems that he still was a member of the Credit Union. He had on deposit with the Credit Union the total sum of Seven Hundred and No/100 ($700.00) Dollars. He was totally disabled to work and did not anticipate ever going back to work. On September 1, 1963, Mr. Morse had accrued interest in his Share Account at the Credit Union Thirty-seven and 31/100 ($37.31) Dollars. Mr. Morse continued to make additional deposits to said account, with earned interest credited thereto, amounting to Five Thousand and No/100 ($5,000.00) Dollars which he had on deposit in his Share Account with the Credit Union on November 17, 1967, at the time Mr. Morse passed away. Mr. Morse had also borrowed monies from the Credit Union which amounted to Two Thousand Three and 08/100 ($2,003.08) Dollars, including principal and interest.

This case was tried on an agreed Statement of Facts. The Trial Court found that James K. Morse was insured by the Appellant from September 1, 1963 until the date of his death, November 17, 1967; that all premiums had been paid on the two group life insurance policies by the Credit Union from September 1, 1963, until November 17, 1967; that more than two (2) years had elapsed since the Credit Union started paying the premiums on the policies prior to the time of the death of James K. Morse, and it was incontestable; and that Appellant was liable for the loan in the

amount of Two Thousand Three and 08/100 ($2,003.08) Dollars; and life insurance in the amount of Five Thousand and No/100 ($5,000.00) Dollars, plus twelve per cent (12%) penalty, and a reasonable attorney's fee of One Thousand Five Hundred and No/100 ($1,500.00) Dollars.

Appellant has perfected its appeal and brings forward ten points of error.

By points 1, 2, 3, and 4 Appellant says the Trial Court erred in holding that the validity of Policy No. 4666–G is applicable to the life of James K. Morse, and is not subject to contest in view of the Texas Statutes under the terms of the incontestability clause contained in the policy; in holding that the validity of Policy No. 4666–W is applicable to the life of James K. Morse is not subject to contest under the terms of the incontestability clause contained in the policy; in holding that Appellant's assertion that decedent was not an eligible employee under the terms of Policy No. 4666–G was a contest that was barred by the incontestability clause after the expiration of two years from the date of such coverage, but for the failure of decedent to meet the eligibility requirements of the policy; and, in holding that Appellant's assertion that decedent was not an eligible employee under the terms of Policy No. 4666–W was a contest that was barred by the incontestability clause after the expiration of two years from the date such coverage came into existence, but, for the failure of decedent to meet the eligibility requirements of the policy.

Appellant takes the position that James K. Morse was not eligible for insurance as an "Employee." They do not take the position that he is not insurable as a member of the Credit Union. The Master Policy was not offered in evidence. Although there are provisions in the Group Insurance Policies that were offered in evidence which might require that an "Employee" be physically able to perform the usual duties of his livelihood, or in the near future

would expect to do so. They rely on many cases where the insurability of a member is a part of the insurance policy. Under the restrictive provisions of the insurance policies there are other provisions that bring about some ambiguities. As we view the group insurance policies, they provide that anyone of age 0 but under 6 months of age is entitled to 25% of the insurance permitted under the policies. It also provides that anyone of age 6 months but under 55 years of age is entitled to 100% of the insurance coverage. It also provides that a person age 70 or over is not entitled to any insurance. There is another provision in the insurance policy on the application for insurance that provides that Credit Union members may apply to Appellant for insurance on the life of the member.

It was stipulated in the agreed Statement of Facts that James K. Morse was a member of the Credit Union at the time of his retirement from the Red River Ordnance Depot, and that he had no intention of ever returning to work. The files of the Credit Union, including those of James K. Morse, were open to Appellant for their examination as they saw fit. Appellant made a casual investigation of the files of the Credit Union by checking every third member's file as to sex, date of birth, share account balance and loan balance. These files were identified by number and not by the member's name. Another random survey was made of the Credit Union's files when Appellant examined 50% of the same being concerned specifically with information relating to date of birth, loan balance, and savings deposit balance. There is nothing in the record to show that James K. Morse ever made application to Appellant for insurance after Appellant took over on September 1, 1963. Apparently, Mr. Morse considered himself to be a member of the Credit Union and the Credit Union considered Mr. Morse to also be a member and continued to pay life insurance premiums as an insured member. Appellant accepted the payments until Mr. Morse passed away.

It was further stipulated and agreed that Appellant recognized the fact that all premiums on the life insurance of James K. Morse had been paid on time and were paid up to the date of his death.

Appellant attempted to return the premiums on the insurance policy of $117.72, and also paid to the Credit Union the sum of $700.00 which was supposed to represent death benefits under Group Policy No. 4666–W. If Mr. Morse was "uninsured" it doesn't appear to the Court that the Appellant would be liable for this $700.00.

We have carefully considered the agreed Statement of Facts and the provisions of the group insurance policies and find that James K. Morse was insured under the group life insurance policies. There is one provision in one of the group policies which reads as follows:

"If two or more persons shall be jointly indebted to the Credit Union, only the Member whose name first appears on the evidence of indebtedness shall be eligible for insurance under this policy."

This provision seems to create some more ambiguity. In a memorandum from the original file dated September 1, 1963, we find the following:

"SUBJECT: SHARE INSURANCE POLICY NO. 4666–W

"Our policy for the share of savings insurance F. 1.2133 is somewhat more restrictive than the coverage we will be actually providing. It is our intention to provide the same coverage as was provided by the *former carrier*.

According to our information, the former carrier's policy became effective October 1, 1951, and provided coverage on up to $1,000 of insurable balances on each member. The policy was subsequently amended on January 1, 1959 to provide coverage on up to $2,000 of insurance balances for each member.

For purposes of claims administration, in order to determine the amount of coverage to be provided on deposits, *we will consider that our plan became effective October 1, 1951*, as far as the first $1,000 of insurable balances is concerned, *and on January 1, 1959*, as far as coverage on up to $2,000 of insurable balance is concerned." (Emp. added)

A letter to the Credit Union dated October 10, 1963, apparently offered in evidence in the agreed Statement of Facts by Appellant, reads as follows:

"*This letter is to verify that effective September 1, 1963, all Credit Union members are insured by Life Savings Protection up to $5,000.00 per member.* The share insurance policies outlining this coverage in complete detail have been filed with the Texas Insurance Department and will be delivered as quickly as a final approval has been received. Minnesota Mutual already has on file with the Texas Insurance Department a share insurance policy in the maximum amount of $5,000.00 per individual. This is general procedure and the insurance department automatically approves such filings sixty days after date of filing." (Emp. added)

We hold that the law cited by Appellant in support of the first four points of error is not applicable to the case at bar. It just doesn't seem that the insured had to be an employee of the Red River Ordnance Depot, but was in truth and in fact a member of the Credit Union. The stipulation of facts show that he owed the Credit Union Two Thousand Three and 08/100 ($2,003.08) Dollars at the time of his death, that he had on deposit with the Credit Union Five Thousand Dollars ($5,000.00) and was, therefore, entitled to Five Thousand Dollars ($5,000.00) worth of life insurance. Reserve Loan Life Insurance Company of Texas v. Brown,

Tex.Civ.App.1942, 159 S.W.2d 179, writ ref'd; National Life Underwriters v. Williams, Tex.Civ.App.1946, 197 S.W.2d 487, writ refused. We hold that the incontestability clauses of the group insurance policies are applicable. Article 3.44, Section 3, V.A.I.C.; Lee v. Universal Life Insurance Company, Tex.Civ.App.1967, 420 S.W.2d 222, w. r., n. r. e. Article 3.44, Section 3, supra, was mandatory. Points 1, 2, 3 and 4 are overruled.

Points 5 through 10 as raised by Appellant had to do with waiver and estoppel. What we have already said seems to point out that Appellant did waive and was estopped to deny its coverage under the group insurance policies. James K. Morse was a member of the Credit Union on September 1, 1963. The Credit Union had paid the premiums on the policies up until the time that James K. Morse passed away on November 17, 1967. We think the provisions of the group insurance policies bring them clearly within the provisions of waiver and estoppel. Legal Security Life Insurance Company v. Erwin, Tex.Civ. App.1963, 372 S.W.2d 750, w. r., n. r. e., and the authorities cited therein. As we study the provisions of the group policies whereby minor children may be insured when they are not physically able to follow any "employment" and where the group policies say that when two or more people are insured, we think the intention of the group policies is to insure the "members" of the Credit Union; not the "employees" of the Red River Army Ordnance Depot. 32 Tex.Jur.2d 408, Sec. 243; 32 Tex.Jur.2d 411, Sec. 244; 32 Tex.Jur.2d 412, Sec. 245. Appellant accepted the premiums on this policy until the time of the death of James K. Morse. In the memorandum that was offered in evidence in the agreed Statement of Facts, Appellant said the group policies became effective October 1, 1951, instead of September 1, 1963, the date of issue of such policies. Points 5 through 10 are overruled.

The judgment of the trial court is affirmed.