The MINNESOTA MUTUAL LIFE INSUR-
ANCE COMPANY, Petitioner,

v.

Ethel C. MORSE, Executrix et al.,
Respondent.

No. B–3318.

Supreme Court of Texas.

Nov. 15, 1972.

Rehearing Denied Dec. 13, 1972.

Atchley, Russell, Hutchinson & Waldrop, Victor Hlavinka, Texarkana, for petitioner.

Smith, Stroud, McClerkin & Conway, Winford L. Dunn, Jr., Texarkana, for respondent.

REAVLEY, Justice.

Ethel C. Morse brought this suit to collect insurance benefits due under group life policies which protected her husband, James K. Morse. The dispute is over the amount of those benefits and the effect of provisions of incontestability. The trial court held the insurance company liable for the full amount sought, and the court of civil appeals affirmed. 476 S.W.2d 753. Holding the incontestability provisions to be inapplicable, we reverse.

James K. Morse was an employee of the Red River Ordnance Depot until the time of his retirement by reason of total and permanent disability on October 29, 1962. He continued thereafter as a member of the Red River Employees Federal Credit Union. The Minnesota Mutual Life Insurance Company provided group life insurance coverage for members of the Credit Union under two master policies issued on September 1, 1963. Under policy no. 4666–W Minnesota Mutual provided insurance in an amount equal to the member's savings account at the time of death. Under policy no. 4666–G it agreed to pay a sum equal to a member's loan balance with the Credit Union at the time of the member's death. The premiums, based on total deposits and loan balances, were paid monthly by the Credit Union as a benefit to its members.

At the time of his retirement on November 29, 1962, James K. Morse had a deposit balance of $700 and a loan balance of $341. The loan balance was paid at that time by a prior insurer. On the date of the issuance of Minnesota Mutual policies on Sep-

tember 1, 1963, Morse had a deposit balance of $737.31, and he owed no loan indebtedness to the Credit Union. At the time of his death on November 17, 1967, Morse's deposit balance was $5,000 and his loan account balance was $2,003.08. Ethel C. Morse, the widow and sole beneficiary under the will of James K. Morse, seeks payment by the insurance company of a sum equal to the full deposit and loan balances as of the date of her husband's death. Minnesota Mutual contends that it owes the smaller deposit balance and a premium return of $117.72. Under the lower court judgments, Ethel Morse has recovered the full amount plus penalty and attorney fees.

The amount of premiums paid and the amount of life insurance on the Credit Union members changes from month to month under these policies. Policy 4666–W, covering deposit accounts, provides that it "is issued for a term period of one month" and "may be renewed for further consecutive monthly periods by timely payment of the premium."

On September 1, 1963 when Minnesota Mutual first issued its policies, James K. Morse had no loan balance and there was no amount of insurance on his life as of that date under policy 4666–G. The terms of policy 4666–W provide for the full coverage of the deposit balance of each member as of the date of issuance (with some reduction because of the member's age):

INSURABLE BALANCE. The Insurable Balance is the Member's total ledger balance, up to a maximum of $5,000, for which a premium has been paid or is payable during the time this policy is in force . . .

As of the date of issuance every member of the Credit Union enjoyed this coverage irrespective of employment or disability. To this extent we agree with the construction of the policy made by the court of civ-

il appeals. This is not a construction reached because of the effect of the incontestability clause; it is reached under the policy terms which do not otherwise limit coverage. As of September 1, 1963 the amount of coverage of James K. Morse under policy 4666–W was $737.31. No withdrawals were made by Morse and the coverage to this extent, at least, continued until his death. The problem is with the subsequent increases in his savings account as well as the subsequent loans.

Policy no. 4666–W contains this provision:

INCREASES IN AMOUNT OF INSURANCE. Except when evidence of insurability is required, increases in Amounts of Insurance because of an increase in the Member's ledger balance shall be the date of the increase provided the Member is physically able to perform the usual duties of his livelihood; if not, the increase shall become effective on the first day following the ledger increase that he is physically able to perform the usual duties of his livelihood.

Policy No. 4666–G contains a similar provision:

All members under age 70 who become indebted to the Credit Union subsequent to the date of issue of this policy, and who are physically able to perform, or within a reasonable time may be expected to resume, the usual duties of their livelihood, shall become eligible for insurance on the date of their indebtedness.

This case was tried under an agreed statement of facts by which it was agreed that James K. Morse was neither able to perform, nor expected to resume, the usual duties of his livelihood at any time after October 29, 1962. However, it has been held that Minnesota Mutual is liable to the extent of the deposits and loans made subsequent to the original issuance of these policies because the incontestability clauses

in those policies bar the company from raising the disability defense.

The incontestability clause in policy no. 4666–W states: "This policy shall be incontestable two years from its date of issue." Policy no. 4666–G provides: "The validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue . . . ." All premiums, computed on the increased balances, have been paid on these policies up to the date of Morse's death. Both policies had been in effect for more than two years when he died in 1967. Petitioner did not contest coverage of the deceased prior to his death.

 The purpose of incontestability clauses in insurance policies (and the statutes which require them: V.A.T.S. Insurance Code art. 3.44 § 3, relative to life insurance policies, and art. 3.50 § 2(2) relative to group life insurance policies) is to protect the insured from a contest as to the validity of the policy after the expiration of the set period. Kansas Life Ins. Co. v. First Bank of Truscott, 124 Tex. 409, 78 S.W.2d 584 (1935); American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397 (1921); National Life Underwriters v. Williams, 197 S.W.2d 487 (Tex.Civ.App. 1946, writ ref'd); Simpson v. Mutual Life Ins. Co., 24 N.Y.2d 262, 299 N.Y.S.2d 835, 244 N.E.2d 655 (1969); see generally, 1 Appleman, Insurance Law and Practice, §§ 311–337 (1965). The incontestability clause should not be applied to change the meaning of the terms of the policy or to enlarge its coverage. Southwestern Life Ins. Co. v. Houston, 121 S.W.2d 619 (Tex. Civ.App.1938, writ ref'd); Great American Reserve Ins. Co. v. Fry, 418 S.W.2d 716 (Tex.Civ.App.1967, n. r. e.); Fisher v. United States Life Ins. Co. in City of N. Y., 249 F.2d 879 (4th Cir. 1957). Whatever might have been the effect of the incontestability provisions if the policies issued by Minnesota Mutual had excluded coverage at the time of their issuance for

any member of the Credit Union then disabled, that is not the question before us. The original policy coverage here was clearly valid. The question is how the subsequent deposits and loans affect the amount of that coverage. The incontestability clauses speak of the validity of the *policy* from its *date of issue* and do not purport to limit or extend amounts of insurance. Under the express terms of the policies, withdrawals or decreases in the accounts of the members would correspondingly reduce the amount of the insurance coverage. That coverage would also be increased by deposits or new loans, but only if or when the member was physically able to perform the usual duties of his livelihood. Since James K. Morse was disabled at the times when his accounts were increased, no increase resulted in the amount of his insurance coverage.

The court of civil appeals held that by acceptance of the premiums computed on the full balances of these accounts of James K. Morse up to the date of his death, Minnesota Mutual has waived any defense relative to the disability of Morse and is now estopped to deny coverage to the full extent of the balances as of the death of Morse. Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended. Great American Ins. Co. v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App.1960, writ ref'd).

Under the agreed facts of this case, Minnesota Mutual Life Insurance Company owed at the time of the death of James K. Morse no more than $737.14 and the return of excessive premiums. The judgments below are reversed; the case is remanded to the trial court for entry of judgment in accordance with this opinion.