956 F.Supp. 701 (1996)
FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager for the FSLIC Resolution Fund, Plaintiff,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant.
No. 3:87-CV-2923-T.
United States District Court, N.D. Texas, Dallas Division.
January 23, 1996.
*702 Patricia Meriam Reed, F.D.I.C., Legal Div., Dallas, TX, John Perry Lilly, Jeffrey Willcox Hurt, Ann Kenney Creighton, Leonard Hurt & Parvin, Dallas, TX, Robert J. DeHenzel, F.D.I.C., Legal Div., Washington, DC, for F.D.I.C.
James A. Knox, Michael David Farris, Vial Hamilton Koch & Knox, Dallas, TX, for U.S. Fire Ins. Co.
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
MALONEY, District Judge.
Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. The motions are opposed. After considering the motions, the responses, the replies, and the pleadings in this case, the Court is of the opinion that Defendant's motion for summary judgment should be granted and Plaintiff's motion for partial summary judgment denied.
Irving Savings Association filed this action to recover from Defendant U.S. Fire under an insurance contract known as Form No. 22 Savings and Loan Blanket Bond. The bond named as insured's Irving Savings and ICR Mortgage Bankers, Inc. The bond covers, among other things, employee dishonesty.
*703 The Federal Savings and Loan Insurance Corporation acquired the claims of Irving Savings after it became insolvent. The Federal Deposit Insurance Corporation was later substituted for the FSLIC following the passage of the Financial Institutions Reform, Recovery, and Enforcement Act, Pub.L. 101-73, 103 Stat. 183 (1989).
FDIC contends that former employees of the named insureds acted dishonestly, as defined in Insuring Agreement (A) of the bond, which caused a loss to Irving Savings. FDIC claims that U.S. Fire breached its duty of good faith and fair dealing, and violated Art. 21.21 of the Texas Insurance Code by not paying the claim. U.S. Fire denies liability, and asserts various defenses based on the terms and conditions of the bond.
The stipulated facts indicate that U.S. Fire issued to Irving Savings Bond No. 600 024374 1, along with various riders. The bond was effective from December 16, 1982, to December 16, 1985, unless the bond terminated sooner according to its terms.
In late 1983, U.S. Fire was notified that new owners had acquired ISA. U.S. Fire requested information regarding the new owners. Irving Savings delayed in providing the requested information.
On March 15, 1984, U.S. Fire notified its local recording agent, Alexander & Alexander of Texas, Inc. (A & A), that it would terminate coverage if it had not received the requested information in thirty days. On March 22, 1984, A & A responded that it would provide U.S. Fire the information within the specified time.
On April 18, 1994, David Hilling,[1] sent a letter to A & A stating that he and his wife were residents of Bozeman, Montana, and that the current management team would continue to operate Irving Savings. He also promised to forward the information the Hillings filed with the FSLIC upon their return to Montana.
On June 25, 1984, U.S. Fire sent Irving Savings notice that the bond was being cancelled effective August 25, 1984. The stated reason for the cancellation was: (1) the insured had failed to provide background information on David Hilling and Amy Hilling;[2] (2) absentee ownership; (3) the insured had failed to provide the December 31, 1983, CPA audit; and (4) the insured had failed to provide a copy of the resume of Ron Dodd.[3]
When Irving Savings received the notice of cancellation it provided most of the requested materials to A & A. The final piece of information, the Dodd resume, was provided to A & A in early August, 1984. On August 17, 1984, U.S. Fire reinstated the bond.
On September 12, 1984, Jim Hamlet, bond manager of U.S. Fire, sent a letter to Raymond Mitchell of A & A. In the letter, Hamlet states that he is concerned because the resumé of Dodd indicates that Irving Savings "experienced severe regulatory examinations." Hamlet also states that he feels "the association is playing games with us," and that each additional piece of information received creates new concerns. Further, had U.S. Fire "known of the `severe regulatory examinations' the bond would not have been reinstated."
On October 29, 1984, U.S. Fire sent Irving Savings a second notice of cancellation, listing December 29, 1984, as the cancellation date. U.S. Fire exercised its right to cancel the bond under § 11(c), which required giving Irving Savings 60 days notice of the cancellation. Thereafter, U.S. Fire refunded the sum of $5,297, which represented the unearned premium paid for the period December 29, 1985, through December 16, 1985.
On December 30, 1984, Irving Savings requested that U.S. Fire issue a twelve-month discovery rider pursuant to § 12 of the bond. U.S. Fire consented to the request, and accepted a $1,650 premium for the bond.
*704 U.S. Fire now moves for summary judgment on all of FDIC's claims. U.S. Fire offers several theories in support of its motion for summary judgment on FDIC's claim for breach of contract, including a "takeover defense" pursuant to § 11(c) of the bond. Because the takeover defense asserted by U.S. Fire disposes of FDIC's claim for breach of contract, the Court does not decide the merits of the alternative grounds asserted by U.S. Fire.
Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).
Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. Id. at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510.
The bond purchased by Irving Savings is a discovery bond. See Sharp v. FSLIC, 858 F.2d 1042, 1043 (5th Cir.1988). The bond provides insurance against, among other things, loss by fraud or dishonesty of savings and loan employees. Id. The bond insures only against loss which is discovered during the coverage of the bond. Id. Section 11(c) of the bond provides in part:
This bond shall be deemed terminated or canceled as an entirety ... (c) immediately upon the taking over of the insured by a receiver or other liquidator or by State or Federal Officials.
Section 12 of the bond, as amended by rider SR 6091, grants Irving Savings the right to purchase an additional one-year discovery rider at any time before the termination or cancellation of the bond as an entirety. However, § 12(b) states that the additional discover period shall terminate upon the takeover of any state or federal official agency. Further, the right to purchase the rider may not be exercised by any state or federal official.
The SR 5566a discovery rider purchased pursuant to § 12 allows Irving Savings an additional twelve months in which to discover loss sustained before the effective date of the rider. Section 2(b) of the rider states that the additional period shall terminate immediately upon takeover by any state or federal officials.
FDIC maintains that Irving Savings discovered the facts which form the basis of the underlying insurance claims on May 17, 1985.[4] U.S. Fire asserts that the bond terminated by its terms before this date. Further, U.S. Fire claims Irving Savings did not have the right to purchase the rider, or, alternatively, the rider terminated by its terms. If so, FDIC's claims fall outside of the scope of coverage.
U.S. Fire asserts that the undisputed facts establish that government officials assumed authority and control over Irving Savings by September, 1984. U.S. Fire argues that the takeover triggered the § 11(c) termination clause, thereby barring recovery for FDIC's claims.
FDIC argues that the takeover defense fails because state and federal officials did not takeover the "core functions" of Irving Savings. FDIC states that, although Irving Savings was operating under state supervisory control and was subject to a cease and desist order, several core functions of the association were performed by officers and directors of Irving Savings. However, after considering the undisputed summary judgment evidence, the Court finds this argument unconvincing.
A takeover occurs when state or federal officials assume control or management of the savings and loan-not necessarily involving the transfer of absolute title. U.S. *705 Fire Ins. Co. v. FDIC, 981 F.2d 850, 851 (5th Cir.1993). State or federal officials assume management and control when they prohibit the institution from performing the core functions of a savings and loan without permission. Id. The fact of voluntary supervision or that state or federal officials could have employed more restrictive means of controlling the institution does not determine whether § 11(c) is implicated. Id. at 851-52.
In this case, on January 10, 1984, the Federal Home Loan Bank Board issued a letter advising that the FHLBB and the Texas Savings and Loan Department had become aware of significant unsafe and unsound practices and regulatory violations committed by Irving Savings. The letter requested that the directors of Irving Savings meet with the FHLBB on January 25, 1984, and restricted certain activities. On May 17, 1984, the TSLD issued an Amended Cease and Desist Order. In conjunction with the cease and desist order, the TSLD issued an order placing Irving Savings under voluntary supervisory control.
On September 11, 1984, H. Earle Hall, Jr., Deputy Commissioner and Supervisory Agent for Irving Savings, sent a letter to Ron Dodd. The letter states:
You are hereby notified that, as of September 11, 1984, no meeting of the Board of Directors of Irving Savings Association or its subsidiaries shall occur without at least two days actual written notice to the Supervisory Agent, with an opportunity for the Supervisory Agent or his designated representative to attend the meeting. Further, no actions of the Board of any such meeting shall be effective or binding on the Association or subsidiary, as applicable, until reviewed by the Supervisory Agent and specifically approved in writing.
On September 17, 1984, L.E. Bowman, Commissioner Texas Savings and Loan Department, sent a letter to the board of directors of Irving Savings. The letter states that no officer, director, employee, or agent of Irving Savings is authorized to represent the association at any loan closing, closing of a real estate purchase or sale, or any other transaction without the specific written approval of the supervisory agent.
The undisputed summary judgment evidence indicates that by September 17, 1984, Irving Savings had been taken over by federal and state authorities for purposes of § 11(c). See U.S. Fire, 981 F.2d at 851-52.
Although the bond terminated by its own terms before FDIC alleges that Irving Savings discovered the potentially covered claims, FDIC argues that by issuing the discovery rider, U.S. Fire waived the takeover defense. FDIC states that U.S. Fire was on notice of the cease and desist order, and knew that Irving Savings experienced "severe regulatory examinations." Accepting these facts as true, FDIC's waiver argument fails as a matter of law.
FDIC relies on Pitts v. American Security Life Ins. Co. and Federal Savings and Loan Ins. v. Transamerica Ins. to support its position on waiver. However, neither case was determined by interpreting Texas law. See Pitts v. American Security Life Ins. Co., 931 F.2d 351, 357 (5th Cir.1991) (interpreting ERISA using federal common law); Federal Savings and Loan Ins. v. Transamerica Ins., 705 F.Supp. 1328 (N.D.Ill.1989) (interpreting Illinois contract law). Texas law supplies the rule of decision in this case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
Under Texas law, a condition precedent to performance on an insurance contract may be waived by actions of the insurance company. Equitable Life Assur. Society of the United States v. Ellis, 105 Tex. 526, 147 S.W. 1152 (1912); Braugh v. Phillips, 557 S.W.2d 155, 158 (Tex.Civ.App.Corpus Christi 1977, writ ref'd n.r.e.). Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353, (Tex.1971). Waiver prevents an insurance company from "avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy." Minnesota Mutual Life Insurance Co. v. Morse, 487 S.W.2d 317, 320 (Tex.1972). However, it is well settled in Texas that waiver cannot enlarge the risks covered by *706 a policy and "cannot be used to create a new and different contract with respect to the risk covered and the insurance extended." Morse, 487 S.W.2d at 320; Great American Insurance Co. v. Mitchell, 335 S.W.2d 707 (Tex.Civ.App.-San Antonio 1960, writ denied). Acceptance of premiums by the insurance company does not alter this rule. See, e.g., Morse, 487 S.W.2d at 320; Hocutt v. Prudential Insurance Company of America, 501 S.W.2d 347 (Tex.Civ.App.  Texarkana 1973, no writ).
In Mitchell, the insured purchased a life insurance policy which terminated when he reached the age of 65. Mitchell, 335 S.W.2d at 707. After the insured died, his widow, the named beneficiary, attempted to collect under the policy. Id. The defendant insurance company denied coverage because the policy terminated by its terms. Id. The trial court ruled that the defendant insurance company, who was on notice of the age of the insured, waived the termination provision by accepting premiums for eight months after the termination date. Id. The court of appeals reversed the trial court, stating that waiver and estoppel cannot operate to "rewrite and enlarge the risks covered by the policy." Id. at 708. The court of appeals also ruled that the only remedy available to the widow was recovery of the unearned premiums. Id.
In this case, ruling that U.S. Fire waived the takeover provision would substantially alter and enlarge the risks covered by the policy. As stated by a panel of the Fifth Circuit:
[A] fidelity bond insures the fidelity of the employees and the officers of the bank. In the case of a receivership or a takeover, the officials who purchased the bond to insure their own honesty are no longer in control of the institution. Takeover or receivership would substantially alter the character of the risk covered by the policy.
Sharp, 858 F.2d at 1045-46. Therefore, waiver is not available to FDIC in this case.
This ruling is consistent with the general application of waiver in the insurance context. As stated above, waiver avoids forfeiture because of the failure of the insured to comply with a provision of the policy. See Morse, 487 S.W.2d at 320. For example, waiver may be applied to avoid forfeiture where the insured fails to substantially comply with a notice or proof of loss requirement. E.g., General American Life Ins. Co. v. Rodriguez, 641 S.W.2d 264, 269 (Tex.App.Houston [14th Dist.] 1982, no writ); Dairyland Cty. Mut. Ins. Co. v. Keys, 568 S.W.2d 457, 459 (Tex.Civ.App.  Tyler 1978, writ ref'd n.r.e.). In contrast, "Termination by receivership or takeover involves termination of the contract by a specified exogenous event that has nothing to do with the relationship between the insurer and the insured." Sharp, 858 F.2d at 1046.
The express language of both the bond and the discovery rider provide that coverage shall terminate upon takeover by state or federal officials. Further, the bond provides that no state or federal official shall have the right to purchase the discovery rider. Ruling that coverage exists after a takeover occurred would materially change the scope of coverage, would be contrary to the plain language of both the bond and the rider, and would circumvent the objective intent of the parties to the contract. The Court determines that FDIC's claim for breach of contract fails as a matter of law.
FDIC also raises concerns about the unearned premium retained by U.S. Fire. Because both the bond and the discovery rider provide for the return of any unearned premium after termination, U.S. Fire must return the retained unearned premium it accepted for the discovery rider.
U.S. Fire also moves for summary judgment on FDIC's claim for breach of the duty of good faith and fair dealing.
Under Texas law, a breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying benefits under the policy; and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995). The general rule is that there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not *707 covered. Id. at 341. Because FDIC has not asserted a valid claim under the policy, its claim for breach of the duty of good faith and fair dealing fails as a matter of law. U.S. Fire's motion for summary judgment is granted.
As a final matter, because FDIC's claims fail as a matter of law, its motion for partial summary judgment is denied.
It is therefore ORDERED that Defendant's Motion for Summary Judgment, filed November 14, 1995, is granted.
It is FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment, filed November 14, 1995, is denied.
It is FURTHER ORDERED that Defendant U.S. Fire shall return the unearned premium that Irving Savings tendered for the purchase of discovery rider SR 5566a.
It is FURTHER ORDERED that the claims of Plaintiff FDIC against Defendant U.S. Fire are dismissed with prejudice.
NOTES
[1] David and Amy Hilling purchased 100% of the stock of Irving Investment Company which owned 100% of the stock of Irving Savings.
[2] David Hilling was president of Irving Savings from September 8, 1983, to December 8, 1983, and chairman of the board from August 11, 1983, to September 11, 1984. Amy Hilling was a member of the board for certain periods.
[3] Ron Dodd was president of Irving Savings from December 8, 1983, to December 31, 1984.
[4] FDIC's Response to Defendant's Motion for Summary Judgment, at p. 9 (filed December 14, 1995); Plaintiff's First Amended Complaint, paragraph 22 (filed July 21, 1989).