of the state court garnishment proceedings. Federal offers several theories for finding personal jurisdiction, and argues that abstention is not warranted.

The Court concludes that even if it had personal jurisdiction over all defendants,[2] this case should be dismissed in light of the pending state court action. Both sides discuss the abstention issue in terms of the factors set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), for determining whether "exceptional circumstances" existed justifying dismissal of a federal court action in favor of pending state proceedings. This, however, is not the applicable standard.

In *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Supreme Court explained that when the federal action is a declaratory judgment action, the district court is vested with far greater discretion in accord with *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, —— U.S. at ——, 115 S.Ct. at 2137.

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175–76. *See also Horne v. Firemen's Retirement Sys.*, 69 F.3d 233 (8th Cir.1995) (district court acted within its discretion under *Brillhart* in dismissing declaratory judgment action in light of state court proceedings instigated by defendants on same issues).

In the present case, it is undisputed that the claims of all parties of interest can satisfactorily be adjudicated in the state court proceeding. There are no matters of federal law to be decided. A declaratory judgment will serve no useful purpose.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss the complaint is granted.

**Jeffrey W. SHELTON, Plaintiff,**

v.

**ANNUITY BOARD OF the SOUTHERN BAPTIST CONVENTION and the Prudential Insurance Company of America, Defendants.**

**No. 1:95CV5SNL.**

United States District Court,
E.D. Missouri,
Southeastern Division.

Feb. 20, 1996.

---

2. Without deciding this specific issue in this case, the Court believes it does have personal jurisdiction over all defendants. This is a declaratory judgment action, and as such is not as completely independent of the underlying tort action as defendants maintain. The issue of policy coverage arises from defendants' contacts with Missouri enumerated in the long arm statute—the commission of a tort in Missouri by Sprigg Lane and Augusta, and the use of real estate located in Missouri by the tort plaintiffs.

The Court does not believe that tort judgment creditors can initiate garnishment proceedings in state court against the tortfeasor's insurer and yet maintain that a federal district court sitting in that state has no personal jurisdiction over them in the insurer's declaratory judgment action raising the same issues.

126

Chris N. Weiss, Lichtenegger and Payne, Jackson, MO, for plaintiff.

Richard J. Pautler, Partner, Peper and Martin, St. Louis, MO, for defendants.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff has filed this action seeking payment of benefits allegedly due under a group health insurance plan. In May 1995 defendants filed a motion for summary judgment (# 8). On June 23, 1995 this case was reassigned to the undersigned. In August 1995, this Court entered a show cause order directing the plaintiff to respond to the defendants' summary judgment motion. In September 1995 responsive pleadings regarding the pending summary judgment motion were filed by the parties. On October 25, 1995 plaintiff filed a supplemental memorandum raising for the first time the issue of whether Missouri or Texas law was controlling. On December 29, 1995 this Court entered a show cause order directing the defendants to file a responsive pleading addressing the "choice of law" issue raised by the plaintiff. On January 11, 1996 defendants filed their pleading in response to the Court's December 29, 1995 show cause order. This matter is now ripe for disposition by the Court.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact."

*Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff was an employee of the Immanuel Baptist Church in Cobden, Illinois from October 1985 through September 1986. This church, during the relevant time-period, was associated with the Southern Baptist Convention. During his employment tenure with the Immanuel Baptist Church, plaintiff applied for and became a participant in a health insurance program, known as the Church Comprehensive Medical Program (the "Plan") sponsored by defendant Annuity Board of the Southern Baptist Convention

(hereinafter referred to as simply the Annuity Board) and administered by the Aetna Life Insurance Company. In September 1986, plaintiff became totally disabled and no longer employed by the Immanuel Baptist Church. Plaintiff has not been employed by any church affiliated with the Southern Baptist Convention since September 1986.

Beginning in January 1991, the Plan became self-insured and administered by defendant Prudential. Up until January 1, 1994, the Plan's premiums were collected directly from individuals whom the Plan believed to be eligible participants in the Plan. However, starting January 1, 1994 the Plan would begin collecting premiums, not directly from Plan participants, but instead from the Southern Baptist churches for their employee-participants. Affidavit of Joel H. Mathis. When the Plan notified Immanuel Baptist Church of the change in the way premiums would be collected, i.e. it would be charged a premium for its employees participating in the Plan, including the plaintiff, Immanuel Baptist Church advised the Plan that the plaintiff had not been employed by it since September 1986. Mathis Affidavit; Defendants' Exhibit 2. The Plan, as administered by Prudential, requires an eligible participant to have been employed full-time on January 1, 1991 by a church or related organization affiliated with the Southern Baptist Convention.

On or about October 1990 plaintiff was diagnosed with Lyme disease and has incurred medical costs associated with the treatment of the disease. Plaintiff seeks to recover under the Plan for these medical costs.

Defendants contend that plaintiff is not entitled to recover pursuant to the Plan because he was never an eligible participant in the Plan, as administered by defendant Prudential. Defendants contend that on January 1, 1991 plaintiff was not "actively at work" full-time at an affiliated church, thus, he is not an eligible participant in the Plan. Plaintiff argues that he was an eligible participant in the Plan, as administered by Aetna, in 1985 and that this has never changed. He further argues that his wife informed both Aetna and Prudential of his "disability" and that his premium payments were accepted by both Aetna and Prudential up until 1993; consequently, defendants are estopped from denying coverage.

■ The first issue to be addressed is whether Missouri or Texas law applies in this case. Courts sitting in diversity jurisdiction must apply the substantive law of the forum state; this includes using the choice of law rules of the forum state. As a federal court sitting in Missouri and deciding issues controlled by state law, this Court must use the choice of law rules used in Missouri.

After reviewing the relevant caselaw, it appears that both the state courts and the Eighth Circuit (interpreting Missouri state law) are in a state of confusion as to the applicable rule for insurance cases. It is well-established that under Missouri law, insurance policies are regarded as contracts. *See, Sargent Construction Co. v. State Automobile Insurance Co.*, 23 F.3d. 1324, 1326 (8th Cir.1994); *Peters v. Employers' Mutual Casualty Co.*, 853 S.W.2d. 300, 301–02 (Mo. 1993); *Arbeitman v. Monumental Life Ins. Co.*, 878 S.W.2d. 915, 916 (Mo.App.1994). However, there appears to be inconsistency as to what Missouri choice of law rule(s) are applicable to contract cases, especially insurance cases. Some Missouri courts have applied the "most significant relationship" test based upon § 145 of the Restatement (Second) of Conflict of Laws (1971) to contract cases, including insurance cases. *See, In Re Master Mortgage Investment Fund, Inc.*, 151 B.R. 513, 518–519 (Bkrtcy.W.D.Mo.1993) (cases cited therein); *Baxter International Inc. v. Morris*, 976 F.2d. 1189, 1195 (8th Cir.1992); *Buck v. American States Life Ins. Co.*, 723 F.Supp. 155, 158 n. 1 (E.D.Mo.1989); *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 671 S.W.2d. 276, 277 (Mo.1984). At other times however, Missouri state courts and the Eighth Circuit have refused to apply the "most significant relationship" test espoused by the Restatement and instead have chosen to apply the choice of law rule known as "lex loci contractus"; i.e. the law of the place where the final event constituting the formation of the contract took place. *See, Nash v. Krivaja Beechbrook Corp.*, 866 F.2d. 1053,

1056 (8th Cir.1989); *Miller v. Home Insurance Co.*, 605 S.W.2d. 778, 779–80 (Mo.1980).

■ The Court is favorably impressed with the analysis of the Bankruptcy Court in *Master Mortgage Investment Fund, supra.* and its conclusion that Missouri has ultimately decided upon the "most significant relationship" test of the Restatement as the applicable choice of law rule in contract cases, including insurance cases. However, the Court recognizes that the Bankruptcy Court's decision is not clearly the established law in Missouri as pronounced either by the Eighth Circuit or the Missouri Supreme Court. In the present case, whichever rule is applicable is of little consequence because under either rule, Texas law would apply. Plaintiff is presently a resident of Missouri; however, he was a resident of Illinois when he first participated in the Plan. Defendant Annuity Board is incorporated in Texas, but registered to do business in Missouri. The initial application was sent to the plaintiff in Illinois, which when completed was returned to Texas for approval. Most of materials related to the Plan were forwarded from defendant Annuity Board in Texas to the plaintiff. It is not clear, but it appears that premiums were paid to defendant Annuity Board (in Texas). Defendant Prudential is incorporated in Kentucky, but registered in Missouri. Given these facts, and in light of any significant dispute among the parties as to the applicability of Texas law to the issues involved, the Court determines that in the interest of efficiency, Texas law will apply to the substantive issues present in the summary judgment motion.

After reviewing the parties' pleadings and the relevant caselaw, the Court determines that no material issues of fact exist and defendants are entitled to judgment as a matter of law.

The Church Life & Health Program, aka Church Comprehensive Medical Program, administered by defendants Annuity Board and Prudential, addresses eligibility of participants under two sections:

### Who is Eligible to Become Covered

### FOR PARTICIPANT COVERAGE

**You are eligible for Participant Coverage while:**

* You are in a Covered Class.

**You are full-time** if you are regularly working for a Southern Baptist church or related organization at least 20 hours per week.

The rules for obtaining Participant Coverage are in the When You Become Covered section.
Defendants' Exhibit 1, pg. 4.

### When You Become Covered

### FOR PARTICIPANT COVERAGE

**Evidence is required:** You must give evidence of good health. This requirement will be met when Prudential decides the evidence is satisfactory.

Your Participant Coverage will begin the first day on which you have enrolled, met the evidence requirement for Participant Coverage and Prudential determines the evidence is satisfactory, and:

* You are eligible for Participant Coverage; and

* You are in a Covered Class for that coverage; and

* Your coverage is not being delayed under the Delay of Effective Date section below; and

* That Coverage is part of the Plan; and

* You are covered for Participant Term Life Insurance benefits under the Group Contract issued by The Prudential Insurance Company.

Defendants' Exhibit 1, pgs. 5–6.

The Plan addresses the matter of termination of coverage in the following section:

### When Your Coverage Ends

### PARTICIPANT AND DEPENDENTS COVERAGE

Your Participant Coverage or your Dependent Coverage will end when the first of these occurs:

* Your membership in the Covered Classes for the coverage ends because your eligibility ends (see below) or for any other reason.

\* The part of the Plan providing the coverage ends.

\* You fail to pay, when due, any contribution required for a coverage of the Plan. But failure to contribute for Dependents Coverage will not cause your Participant Coverage to end.

\* The coverage is Dependents Coverage and your Participant Coverage ends.

---

**End of Eligibility:** Your eligibility will end when you are no longer a full-time Participant actively at work for the Employer....

If you stop active full-time work for any reason, you should contact the Annuity Board of the Southern Baptist Convention at once to determine what arrangements, if any, may be made to continue any of your coverage.

Defendants' Exhibit 1, pg. 60.

The Plan defines the "active work" requirement as follows:

**DEFINITIONS**

**Active Work Requirement:** A requirement that you be actively at work for an employer affiliated with the Southern Baptist Convention, on full-time at the Employer's place of business, or at any place that the Employer's business requires you to go.

Defendants' Exhibit 1, pg. 53.

The Schedule of Benefits, which explains in detail various aspects of coverage provided under the Plan, defines "covered classes" as follows:

**Covered Classes:** All Salaried Employees of a Southern Baptist church or related organization who work at least 20 hours per week.

Defendants' Exhibit 1 (Schedule of Benefits), pg. 1.

 Under Texas law, insurance policies are governed by the same rules of construction applicable to contracts. *Nutmeg Ins. Co. v. Pro–Line Corp.*, 836 F.Supp. 385, 388 (N.D.Tex.1993) *citing National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d. 552, 555 (Tex.1991). An insurance policy's terms are ambiguous "only when the provision to be construed is reasonably susceptible of more than one meaning." *Voluntary Hospitals of America, Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 859 F.Supp. 260, 262 (N.D.Tex.1993) *citing Continental Cas. Co. v. Allen*, 710 F.Supp. 1088 (N.D.Tex.1989). When the terms of an insurance contract are unambiguous, its interpretation is a question of law for the trial court. *Nutmeg*, at 388.

 The plaintiff does not contend that any terms or provisions of the Plan are ambiguous. Moreover, the Court finds that its terms are very clear as regards eligibility for participation in the Plan. In order to be eligible to participate in the Plan, a person must be working as a salaried employee, at least twenty (20) hours per week, for a Southern Baptist Convention church or related organization as of January 1, 1991. There is absolutely no dispute that plaintiff had ceased being a salaried employee and was not working at least twenty (20) hours per week at a Southern Baptist Convention church or related organization as of September 1986. Consequently, plaintiff was never an eligible participant in the Plan.

Plaintiff fails to offer any evidence to rebut this conclusion. Instead, he offers three (3) reasons why he should be entitled to coverage despite not being an eligible participant: 1) since he was initially eligible for health insurance under the "Aetna Plan", his eligibility continues no matter the change of circumstances; 2) defendants are estopped from denying coverage because he allegedly informed them he was "disabled" and they continued to accept his premium payments; 3) he is entitled to have his coverage converted.

 Plaintiff provides no caselaw to support his argument that once he became eligible for coverage, he was eligible "for life". The Plan clearly states otherwise; i.e. that eligibility for coverage continues as long as the participant is a salaried employee actively at work, at least 20 hours per week, at a Southern Baptist Convention church or related organization. Once eligibility ceases, the Plan provides for discretionary continuance of coverage. Plaintiff admits that as of Sep-

tember 1986 he was no longer a salaried employee actively at work, at least 20 hours per week, at a Southern Baptist Convention church or related organization.

Furthermore, the fact that he was initially eligible for coverage under the Plan when it was administered by Aetna is irrelevant. The Plan is provided through the Annuity Board of the Southern Baptist Convention. The claims pursuant to the Plan were first handled by Aetna, then by Prudential. Coverage has remained the same. The Plan, as administered by Aetna, in 1986 provides:

### ELIGIBLE CLASSES

You are eligible for coverage if you are a salaried employee of a Southern Baptist Church and work at least 20 hours per week.

Plaintiff's Exhibit, pg. 1.[1]

### TERMINATION OF COVERAGE

Coverage under this Plan terminates at the earliest to occur of the following:

1. When eligibility ceases.

---

3. When you are no longer in an eligible class. (This may apply to all or part of your coverage.)

Ceasing active work will be considered to be immediate termination of employment, except that if you are absent from work because of sickness, injury, temporary lay-off, or leave of absence, employment may be considered to continue for the purposes of some of the coverages up to the limits specified in the contract. If you cease active work for any reason, you should find out immediately from the Policyholder what coverages, if any, can be continued in force so that you will be able to exercise any rights you may have under this Plan.

Plaintiff's Exhibit, pg. 25.

Thus, plaintiff's argument that he is entitled to payment of benefits under the Plan as administered by Prudential since he was initially eligible under the Plan as administered by Aetna lacks merit because even under the

Aetna Plan his coverage ceased in September 1986.

■ Plaintiff next contends that the defendants are estopped from denying him coverage because he informed them that he was "disabled" and they continued to accept his premium payments. Plaintiff's evidence that he informed the defendants of his status consists of his wife's affidavit and a memo written by an unidentified person. Neither of these pieces of "evidence" demonstrate that either one of the defendants was informed that plaintiff, as of September 1986, had ceased being a salaried employee actively at work, at least 20 hours per week, at a Southern Baptist Convention church or related organization.

Mrs. Shelton's affidavit is replete with hearsay statements and vague references to unidentified persons. Furthermore, her affidavit clearly indicates that all she stated to the defendants, either by a telephone call or on claims forms, was that plaintiff was "disabled". By her own admission, she (and presumably the plaintiff) never informed the defendants that plaintiff had totally ceased working as of September 1986. The fact that she may have informed the defendants that plaintiff was "disabled" does not constitute informing them that her husband was no longer a salaried employee actively at work. Many "disabled" persons are actively at work and there is nothing in the record that demonstrates that the defendants should have known that by stating plaintiff was "disabled" this was to mean he was no longer actively at work.

As for the memo, this too is unauthenticated and consists of statements made by unidentified persons. Furthermore, all it demonstrates is that the defendants were under the mistaken belief that plaintiff was still employed but had a medical problem.

■ As to the payment of the premiums, plaintiff offers the Texas case of *Minnesota Mutual Life Insurance Co. v. Morse*, 476 S.W.2d. 753 (Tex.App.1972) to support his argument that payment and acceptance of

---

**1.** In the future, plaintiff's counsel is advised to clearly mark all exhibits which he has filed a part

of the record.

the premiums estops the defendants from denying coverage. What plaintiff neglected to recognize, is that his cited case was reversed by the Texas Supreme Court in *Minnesota Mutual Life Insurance Co. v. Morse,* 487 S.W.2d. 317 (Tex.1972). The well-established law in Texas is that "the doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy." *Pennsylvania National Mutual Cas. Insurance Co. v. Kitty Hawk Airways, Inc., et. al.,* 964 F.2d. 478, 480–81 (5th Cir.1992) (citations omitted). "[W]aiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended." *Minnesota Mutual Life Ins. Co. v. Morse,* 487 S.W.2d. at 319; *see also, Enserch Corp. v. Shand Morahan & Co., Inc.,* 952 F.2d. 1485, 1498 n. 24 (5th Cir.1992).

In the instant case, plaintiff was not eligible for coverage in the first place. Consequently, his premium payments cannot be used to create coverage which never existed. To allow otherwise, would be creating a "new and different contract with respect to the risk covered". The usual remedy in a situation wherein premiums have been mistakenly paid and accepted is for the insurer to reimburse the payor. Defendants have offered to do this and the Court supports this remedy.

Finally, plaintiff contends that he is entitled to have his coverage converted. The flaw in the plaintiff's argument is that conversion of coverage presupposes that coverage existed in the first place. Since plaintiff was never eligible for coverage under the Plan, as administered by Prudential, he has no basis to support conversion of coverage. Furthermore, if plaintiff was entitled to conversion, he should have taken the steps necessary pursuant to his coverage under the Aetna Plan. Whether he did or didn't is a matter between Aetna and the plaintiff, not between the plaintiff and these defendants.

Plaintiff has offered no affirmative evidence or set forth any specific facts which demonstrate that a genuine issue of material fact exists regarding his eligibility for participant coverage under the Plan provided by the Annuity Board and administered by the Prudential. The record is clear and undisputed that Mr. Shelton was not an eligible participant because he was not a salaried employee actively at work, at least 20 hours per week, at a Southern Baptist Convention church or related organization, as of January 1, 1991, as required under the Plan. Since there are no genuine issues of material facts, defendants are entitled to judgment as a matter of law.