VOLUNTARY HOSPITALS OF
AMERICA, INC., Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
et al., Defendants.

Civ. A. No. 3:91–CV–2577–X.

United States District Court,
N.D. Texas,
Dallas Division.

July 27, 1993.

Terence Michael Murphy, Katie Jean Colo-py, Jennifer Ruth Brandeis, Jones Day Reav-is & Pogue, David Henry Pace, Affiliated Computer Services, Dallas, TX, for Voluntary Hospitals of America, Inc.

Judith A. Schening, Jonathan B Skidmore, Fulbright & Jaworski, Dallas, TX, Frank Friddith Jones, Fulbright & Jaworski, Houston, TX, for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

William Beale Dean, Brown Herman Scott Dean & Miles, Fort Worth, TX, for Home Ins. Co. of Illinois.

Richard Hunt Gateley, McLean & Sanders, Fort Worth, TX, Dennis Randall Yeager, Yeager & Lang, New York City, Geoffrey W. Heineman, Andrew L. Margulis, Michael D. Brown, Ohrenstein & Brown, New York City, for H.S. Weavers (Underwriting) Agencies, Ltd.

Richard Hunt Gateley, McLean & Sanders, Fort Worth, TX, Geoffrey W. Heineman, Andrew L. Margulis, Michael D. Brown, Ohrenstein & Brown, New York City, for Anglo American Ins. Co., Ltd., Commercial Union Assur. Co., Ltd., Assicurazioni Generali S.P.A., Ocean Marine Ins. Co., Ltd., London & Hull Ins. Co., Ltd., Sphere Drake Ins. Co., PLC, Dai–Tokyo Ins. Co. (U.K.), Ltd., Aegon Ins. Co. (U.K.), Ltd., Sovereign Ins. Co. (U.K.), Ltd., Syndicate No. 1127, Syndicate No. 122, Syndicate No. 15, Syndicate No. 190, Syndicate No. 620, Syndicate No. 205.

Sid Stahl, pro se.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court are Defendant, National Union Fire Insurance Company of Pittsburgh, Pa.'s Motion for Summary Judgment, filed on March 15, 1993, Plaintiff's response to this motion and National Union's reply to the response. Having considered these filed materials, the summary judgment evidence and the applicable law, the Court

determines that National Union's motion should be, and hereby is, **GRANTED.**

This case is a dispute over insurance coverage between, on the one hand, insurers that issued directors and officers liability insurance policies and, on the other, the insured. Plaintiff VHA and one of its subsidiaries, VHA Enterprises, along with certain individual officers and directors, were sued by a class of shareholders in a derivative action, hereinafter the "*Ryan* action," which ultimately settled. Ryan's suit was prosecuted with the active assistance of Thomas Reed, a former officer and director of VHA Enterprises. VHA reimbursed its officers and directors for claims against them in the *Ryan* action and also paid their legal fees. VHA now seeks reimbursement for the amounts it expended relating to that lawsuit. The total amount sought exceeds $8,000,000.

National Union moves the Court to grant summary judgment in its favor based on the "insured v. insured" exclusion in the policy. This provision states as follows:

> The Insurer shall not be liable to make any payment for Loss in connection with any claim or claims made against the Directors or Officers ... which are brought by any Insured or the Company; or which are brought by any security holder of the Company whether directly or derivatively, unless such claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company; provided, however, this exclusion shall not apply to wrongful termination of employment claims brought by a former employee other than a former employee who is or was a Director of the Company....

With this language in mind, National Union points out the following definitions in the policy: "'Insured(s)', or 'Director(s) or Officer(s)', means any past, present or future duly elected or appointed Directors or Officers of the Company...." The policy defines "company" as the "Named Corporation [VHA] ... and any Subsidiary thereof." National Union argues that because Reed, a former officer and director of a VHA subsidiary, assisted Ryan, a security holder of the

company, in the *Ryan* action, the insured v. insured exclusion exonerates it from payment and therefore entitles it to summary judgment. VHA argues that the definition of "insured" in the policy is ambiguous and therefore susceptible of the introduction of extraneous evidence to explain its meaning. If true, this assertion would mandate the denial of National Union's motion.

The Court predicates its subject matter jurisdiction on diversity of citizenship, 28 U.S.C. § 1332, and therefore looks to state law as the rule of decision for substantive matters. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where no state court has decided a particular question at issue, the federal court must make an educated guess as to how the state's supreme court would rule. *Nobs Chemical, U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 214 (5th Cir.1980). The applicability of Texas law is undisputed.

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff based on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991), and such allocation depends on the burden of proof that would obtain at trial. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 150 (5th Cir.1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then

shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED. R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11 (1986). The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED.R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

██ Whether the policy's definition of "insured" is ambiguous is a question of law. *Watkins v. Petro–Search, Inc.,* 689 F.2d 537 (5th Cir.1982). An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning. *Continental Cas. Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex.1989). The Court concludes that the exclusion's plain meaning leads to National Union's conclusion. However, VHA asserts that the definition of "insured" means different things in different contexts in the policy. The proper meaning regarding the pertinent exclusion is therefore allegedly lost through ambiguity and may only be restored by the Court's looking beyond the language itself, which would necessitate the trial of fact issues.

██ VHA asserts that National Union's practice of lifting the definition of "insured" from the policy and inserting it wherever the word "insured" is used in the policy leads to nonsensical results. As an example, VHA leads the Court to the policy's Section 8, which requires that "[t]he Company or the Insureds shall, as a condition precedent ... give written notice to the Insurer ... of any claim made against the Insureds." VHA states that

> [t]o make any sense of this provision, the global definition of "insured" must be narrowed to include only those directors and officers who have been sued and are seeking coverage under the policy—no other directors or officers would have need to give notice. However, under National Union's interpretation, all former directors and officers who had *not* been sued and were not seeking coverage would be obligated to give notice because they are insureds. Indeed, since notice is a condition precedent to coverage, the failure of all former directors and officers (all of whom are "insureds" according to National Union) to give notice would negate coverage and give National Union another vehicle to avoid responsibility under its policy.

(Pl.'s Br.Opp'n at 9) (emphasis in original).

However, as National Union notes, VHA's exegesis ignores the narrowing effect of the definite article "the" preceding "insured" in its examples concerning Section 8 as well as Section 9 of the policy. Eliding that article, one might reasonably arrive at VHA's conclusion; yet neither the Court nor the parties may cancel certain words in the contract in order to produce a result different from what would otherwise obtain from the language's plain meaning. The word "insured" on which VHA focuses in the policy other than in the insured v. insured exclusion makes reasonable sense in only one way, and it is the same and singular reasonable sense of the definition of "insured" as applied to the insured v. insured exclusion. As National Union explains:

> Obviously, the term "the Insured" refers to a *specific* insured—the one against whom a claim has been made. Section 8 can only *reasonably* be read one way: to impose an obligation to give notice of a

---

**1.** *See* FED.R.CIV.P. 56(e).

claim on *the specific* past, present or future director or officer *against whom the claim has been made,* but not on all other persons who are insured by the Policy against whom *no* claim has been made, as Plaintiff suggests. Plaintiff's argument blatantly ignores the fact that Section 8 uses the definite article "the," and therefore ignores basic English grammar.... Replacing the term "Insureds" with its definition does not also allow Plaintiff to *rewrite* the rest of Section 8, as Plaintiff does by replacing the definite article "the" with indefinite articles "an" or "any."

(Def.'s Reply at 3) (emphasis in original).

As Judge Goldberg recognized when the wave of poststructuralist criticism began to lap interdisciplinarily over its literary basin, "[u]nlike the deconstructionists at the forefront of modern literary criticism, the courts still recognize the possibility of an unambiguous text." *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1238 (5th Cir.1986). With apologies to Derrida and de Man, the Court recognizes that an analysis of the pertinent policy language reveals that the definition of "insured" as applied to the insured v. insured exclusion does not deconstruct itself into ambiguity. To read the language otherwise would be to adopt the textual methodology of the protodeconstructionist Humpty Dumpty, for whom words meant what he wanted them to. However, the body of anti-Humpty Dumpty jurisprudence is now well established in the courts, both state and federal, from the Supreme Court of the United States, *see Adamo Wrecking Co. v. United States,* 434 U.S. 275, 283, 98 S.Ct. 566, 572, 54 L.Ed.2d 538 (1978) ("All of this leads us to conclude that Congress intended, within broad limits, that 'emission standards' be regulations of a certain type, and that it did not empower the Administrator, after the manner of Humpty Dumpty in Through the Looking–Glass, to make a regulation an 'emission standard' by his mere designation"), to, for instance, the courts of South Carolina. *See, e.g., Brooklyn Bridge, Inc. v. South Carolina Ins. Co.,* 309 S.C. 141, 420 S.E.2d 511, 512 n. 1 (Ct.App. 1992) ("The purpose of an insurance policy is to insure. Insurance policies are written by insurance companies. Like Humpty Dump-

ty, they have the rare privilege of choosing what their words mean. But, unlike Humpty Dumpty, they should say what they mean in advance, not after the fact.") In this instance, the insurance company did say, unambiguously, what it meant in advance.

The parties do not dispute that Reed assisted Ryan in the *Ryan* action; nor do they dispute that Reed was a former director and officer of a VHA subsidiary as contemplated by the policy's language. Because the insured v. insured exclusion is reasonably susceptible of only one meaning and is therefore unambiguous, National Union has demonstrated the applicability of that exclusion and therefore its entitlement to summary judgment. The Court therefore grants National Union's motion.

**SO ORDERED.**