**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

KANASCO, LIMITED,
Claimant-Appellant,

and

VARIOUS ARTICLES OF DRUG, BULK
ANTIBIOTICS, IDENTIFIED IN
ATTACHMENT A, WHICH ARE
LOCATED AT 6110AND 6118
ROBINWOOD ROAD, BALTIMORE,
MARYLAND,
Defendant.

No. 96-1996

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-95-912-H)

Argued: June 6, 1997

Decided: September 10, 1997

Before MURNAGHAN, WILLIAMS, and MOTZ,
Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Murnaghan and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** David Phelps Kennedy, GREER & KENNEDY, L.L.C., Towson, Maryland, for Appellant. Annamarie Kempic, Associate Counsel for Enforcement, FOOD & DRUG ADMINISTRATION, Rockville, Maryland, for Appellee. **ON BRIEF:** Kreg Paul Greer, GREER & KENNEDY, L.L.C., Towson, Maryland for Appellant. Frank W. Hunger, Assistant Attorney General, Lynne A. Battaglia, United States Attorney, Donna C. Sanger, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

The United States filed a complaint for forfeiture requesting the seizure and condemnation of approximately 104 drums of adulterated bulk antibiotics manufactured by Kanasco, Limited. After federal marshals seized the drugs, Kanasco filed an answer to the complaint and a claim for the drugs. Kanasco argued that the drugs were not adulterated, and requested their release and return.

Following discovery, the Government moved for summary judgment maintaining that the drugs were adulterated because they were not manufactured according to "current good manufacturing practice," as defined in 21 U.S.C.A. § 351(a)(2)(B) (West Supp. 1997). Kanasco filed a cross-motion for summary judgment. The company did not dispute that the drugs were not manufactured according to "current good manufacturing practice;" instead, it argued that the drugs were exempt from the manufacturing requirements of § 351 because they were intended for export, and thus fell within the export exemption to the Food, Drug, and Cosmetic Act. See 21 U.S.C.A. § 381(e)(1) (West 1972 & Supp. 1997).

In a well-reasoned memorandum opinion, the district court rejected Kanasco's argument and granted summary judgment to the Government. See United States v. Various Articles of Drugs, Bulk Antibiotics,

Civ. No. H-95-9121 (D. Md. June 6, 1996). Kanasco subsequently appealed to this court.**1** We affirm.

We review the district court's grant of summary judgment de novo. See McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1168 (4th Cir. 1997). In order to prevail on a motion for summary judgment the moving party must establish that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We consider the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Pursuant to 21 U.S.C.A. § 351(a)(2)(B) a drug is "adulterated" if "the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice." 21 U.S.C.A. § 351(a)(2)(B). Adulterated drugs are subject to forfeiture under 21 U.S.C.A. § 334(a)(1) (West 1972 & Supp. 1994).

The district court found that the drugs at issue here were not manufactured according to "current good manufacturing practice" and Kanasco does not appeal that finding. Instead, Kanasco argues that the district court erred by refusing to apply the"intended for export" exemption from this requirement. See 21 U.S.C.A. § 381(e)(1). Pursuant to this exemption, a drug is not "adulterated" (and thus not subject to forfeiture) if the drug is "intended for export" and meets a four fac-

_____

**1** After the appeal was noted, United States marshals destroyed the drugs. However, the case is not moot:

> Simply because the government destroys or otherwise disposes of property sought by the movant, the motion for its return is not thereby rendered moot. See [Mora v. United States, 955 F.2d 156, 159 (2d Cir. 1992)] (collecting cases). When a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint. Id.

Soviero v. United States, 967 F.2d 791, 793 (2d Cir. 1992).

tor test. See 21 U.S.C.A. § 381(e)(1). A drug "intended for export shall not be deemed to be adulterated" if it:

> (A) accords to the specifications of the foreign purchaser,
>
> (B) is not in conflict with the laws of the country to which it is intended for export,
>
> (C) is labeled on the outside of the shipping package that it is intended for export, and
>
> (D) is not sold or offered for sale in domestic commerce.

21 U.S.C.A. § 381(e)(1).

Kanasco claims that the drugs were "intended for export" and that they satisfy the four factor test. The burden of pleading and proving the applicability of § 381(e)(1) is on Kanasco-- the party that seeks the benefit of the exemption. See United States v. 76,552 Pounds of Frog Legs, 423 F. Supp. 329, 337 (S.D. Tex. 1976) (interpreting a related exemption); United States v. Articles of Drug, 634 F. Supp. 435, 452 (N.D. Ill. 1985) (citing Frog Legs and holding that "[i]mporters seeking to reexport drugs under" similar "provisions have the burden of pleading and proving satisfaction of the statutory requirements"), vacated as moot, 818 F.2d 569 (7th Cir. 1987).

John Capanos, president of Kanasco, filed an affidavit stating that the seized drugs were "intended for export." Based on this affidavit, the district court held that Kanasco raised a dispute of fact as to the "threshold requirement" of § 381(e)(1) that the drugs be "intended for export." The Government does not dispute this point, and we agree that there is a factual dispute as to Kanasco's intent.

We also concur with the district court, however, that this factual dispute is not "material" because Kanasco clearly cannot satisfy the requirements of § 381(e)(1)(A) or (B). Kanasco has come forward with no evidence that the drugs seized "accord[ ] to the specifications of the foreign purchaser" or are "not in conflict with the laws of the country to which [they are] intended for export." 21 U.S.C.A. § 381(e)(1)(A)-(B).

4

Kanasco contends that § 381(e)(1) does not require that the drugs be manufactured for a specific foreign purchaser, or that the drugs comply with "the laws of" a particular country. The company asserts that Capanos' affidavit, which stated that he could find a foreign purchaser, and that the drugs met the requirements of unnamed and unspecified "foreign countries," satisfies the first two prongs of § 381(e)(1).

"Under the most basic canon of statutory construction, we begin interpreting a statute by examining the literal and plain language of the statute." Carbon Fuel Co. v. USX Corp. , 100 F.3d 1124, 1133 (4th Cir. 1996). Sections 381(e)(1)(A) and (B) require that in order to be deemed not adultered, drugs meet "the specifications of the foreign purchaser," and that drugs not be "in conflict with the laws of the country to which" they are "intended for export." 21 U.S.C.A. § 381(e)(1)(A)-(B) (emphasis added). By using the definite article "the," Congress signaled that § 381(e)(1) requires proof that a drug accords with both the specifications of a specific foreign purchaser and the laws of a specific foreign country. See Gates & Fox Co. v. OSHRC, 790 F.2d 154, 156 (D.C. Cir. 1986) (interpreting "the haulage equipment" in a regulation and noting that use of "the definite article suggest[s] that some specific haulage equipment is referred to, rather than merely haulage equipment in general"); Voluntary Hosps. of America, Inc. v. National Union Fire Ins., 859 F. Supp. 260, 262 (N.D. Tex. 1993) (stating that "[o]bviously, the term `the Insured'" in an insurance contract "refers to a specific insured") (emphasis in original), aff'd, 24 F.3d 239 (5th Cir. 1994).

The plain language of § 381(e)(1) thus requires a particular foreign buyer and country; not a generalized assertion that the drugs can be sold to some buyer and that sale is consistent with the laws of some foreign country. Kanasco maintains that this interpretation of § 381(e)(1) subverts the objective of the export exemption because drugs that could be sold in foreign markets will instead be destroyed. This argument, however, examines the export exemption in a vacuum, ignoring the fact that it is an exception to the Food, Drug, and Cosmetic Act. "[E]xceptions from a general policy which a law embodies should be strictly construed." Spokane & Inland Empire R.R. v. United States, 241 U.S. 344, 350 (1916); see also Commissioner of Internal Revenue v. Clark, 489 U.S. 726, 739 (1989) ("In construing

5

provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."); Monahan v. County of Chesterfield, Va., 95 F.3d 1263, 1267 (4th Cir. 1996) (stating that "exceptions" to the Fair Labor Standards Act "are to be narrowly construed against the employer asserting them") (quoting Johnson v. City of Columbia, S.C., 949 F.2d 127, 129-30 (4th Cir. 1991)); Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989) (noting that "exceptions to ERISA's preemption provisions" are "narrowly construed").

Moreover, it is particularly appropriate to construe the export exemption narrowly, because a broad interpretation could seriously damage the "overriding purpose" of the Food, Drug, and Cosmetic Act, "to protect the public health." United States v. Bacto-Unidisk, 394 U.S. 784, 798 (1969); see also United States v. Dotterweich, 320 U.S. 277, 280 (1943) ("The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation . . . ."). Kanasco's expansive interpretation would undermine this purpose by crippling the effectiveness of enforcement actions against violators. Drug manufacturers could ignore the statutory quality requirements and produce adulterated drugs for sale in the United States, secure in the knowledge that if caught they could claim the export exemption and subsequently find a foreign buyer for the drugs. Manufacturers could thus produce adulterated drugs with little fear of any effective sanction.

Facing a similar argument in a case involving adulterated food, the Second Circuit reached an interpretation of the export exemption identical to ours:

> The practical aspects of the situation would seem to support this construction, for there is nowhere disclosed an intention that a violator of the Act may avoid the consequences of his wrong by then exporting the outlawed goods to some foreign country which will receive them. However laudatory may be the purpose to conserve the food supply (perhaps even of a condiment or relish such as catsup), an attempt to

6

> rewrite the Act along these lines seems likely to have the effect of nullifying its chief purposes.

United States v. Kent Food Corp., 168 F.2d 632, 634 (2d Cir. 1948).

In sum, Kanasco's interpretation of the export exemption is contrary to the plain language of § 381(e)(1), and would create an unwarranted escape hatch for violators of the Act. The district court properly rejected that interpretation.[2]

AFFIRMED

_____
[2] In light of our holding, we need not reach the district court's rulings as to § 381(e)(1)(C) and (D).

7