**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GILBERT E. SLOOP,
Plaintiff-Appellant,

v.                                                          No. 98-2440

ABTCO, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, Chief District Judge.
(CA-96-83-5-V)

Submitted: February 9, 1999

Decided: May 6, 1999

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert M. Elliot, ELLIOT, PISHKO, GELBIN & MORGAN, P.A.,
Winston-Salem, North Carolina, for Appellant. Steven J. Fishman,
Thomas A. Pinch, THE FISHMAN GROUP, Bloomfield Hills, Mich-
igan, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Gilbert Sloop appeals from the district court's grant of summary judgment in favor of his former employer, ABTCO. The district court found that Sloop's absence from work during his involuntary civil commitment for detoxification was due to his use of alcohol and not covered by the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. §§ 2601-2654 (West 1999). It thus concluded that ABTCO's termination of Sloop's employment did not violate the FMLA. Finding no error, we affirm.

This Court reviews a grant of summary judgment de novo. See United States v. Kanasco, Ltd., 123 F.3d 209, 210 (4th Cir. 1997). The moving party must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts are considered in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The uncontroverted evidence before the district court established that Sloop had been an alcoholic since his teenage years. He was able to avoid alcohol during his first twenty-two years of working at the plant that ABTCO now owns. When ABTCO bought the plant, however, Sloop was demoted and shortly thereafter succumbed to his desire to have a drink. Within three weeks, he was given three weeks of paid leave by ABTCO for in-patient substance abuse treatment.

Following this residential treatment, Sloop returned to work. Thereafter, Sloop relapsed on different occasions over the next eighteen months and entered New River Area Detoxification Center six times, causing him to miss sixteen days from work. Sloop readily admitted the cause for his absences to his supervisor, Alfred Wagoner, and ABTCO's Human Resources manager, Will Swift. In June of 1993 and January of 1994, following two periods of absence due to detoxification, Sloop was warned that his absences due to his relapses were unacceptable and that any recurrence of this problem would result in termination. After returning to work following the

2

January 1994 detox, Sloop claimed that he sought and ABTCO denied leave to undergo residential treatment.**1**

In July 1994, Sloop began drinking alcohol again. On July 4, 1994, after he became abusive towards his wife, she called the police and had him involuntarily committed to the detox center. Drs. Bundy and Belford certified to the District Court of Wilkes County that involuntary commitment was necessary. Sloop's wife called Wagoner and Swift to relate that Sloop would not be at work for several weeks and that he would be undergoing residential substance abuse treatment. Sloop's wife asked Swift if Sloop could use his leave and reminded Swift that Sloop had accrued two weeks of vacation leave. According to Sloop's wife, Swift stated that he would have to discuss the matter with company officials.

On July 7, 1994, Swift called Sloop's wife and told her that Sloop was terminated effective July 5, 1994 for being absent due to his excessive drinking. Sloop was in the detox center until July 12, when the state court judge committed Sloop to a residential treatment facility.

Sloop brought this action against ABTCO alleging that he was discharged in violation of the FMLA. Both parties conceded that Sloop was an employee covered by the FMLA, see 29 U.S.C.A. § 2611(2)(A), and that ABTCO, an employer of more than fifty persons, was covered by the Act, see 29 U.S.C.A. § 2611(4). However, ABTCO argued that Sloop's absence was due to his use of alcohol and therefore not covered by the FMLA. Both ABTCO and Sloop moved for summary judgment.

The district court, adopting the magistrate judge's recommendation made pursuant to 28 U.S.C.A. § 636(b)(1)(B) (West Supp. 1998), granted ABTCO's motion for summary judgment. The district court found that Sloop was "treated" (for purposes of the FMLA) at the detox center because his condition was evaluated by two physicians who determined that he was dangerous to himself and others and should be involuntarily committed. See 29 C.F.R. § 825.114

_____

**1** ABTCO denies this claim. Resolution of this issue is not necessary as Sloop does not assert a claim for this incident.

(a)(2)(i)(A), 29 C.F.R. § 825.114(b). However, the court found that Sloop's absence from work was due to his use or consumption of alcohol during the July 4, 1994, weekend, not due to the court-ordered residential treatment ordered seven days later. **2** Thus, his absence, though later culminating in residential treatment, was not covered due to a regulation promulgated pursuant to the FMLA. See 29 C.F.R. § 825.114(d).**3**

On appeal, Sloop claims that, because the district court found that he was suffering from a serious medical condition requiring continuing treatment, he was entitled to coverage under the express provisions of the regulation. However, the evidence supports the district court's finding that Sloop was unable to work due to his drinking. Sloop was due at work on July 5, 1994 at 7:00 a.m. The medical records provided by the detox center reflect that his blood alcohol was .05 on July 5. Sloop was not admitted to the detox center until after 2:00 p.m. on July 5, 1994. Thus, the district court properly found that Sloop was not able to attend work on July 5, 1994, not because of his treatment, but because of his heavy consumption of alcohol.**4**

_____

**2** The district court also opined that Sloop arguably did not provide proper notice or demonstrate that more favorable treatment was granted employees not exercising FMLA rights. Because we find that summary judgment was properly granted on the basis that Sloop's leave was due to his use of alcohol, rather than his treatment, we express no opinion on the viability of these grounds.

**3** 29 C.F.R. § 825.114(d) provides that "[s]ubstance abuse may be a serious health condition if the conditions of this section [enumerating what is a `serious health condition'] are met. However, FMLA leave may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider. On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave." (emphasis added).

**4** On appeal, Sloop argues that because the effective date of his termination was July 6, that July 5 is irrelevant. Though his superiors did not make a decision until July 7, 1994, and then arbitrarily chose July 6 for the effective date, Swift's uncontroverted testimony establishes that Sloop was fired for disregarding the previous warnings to not miss work due to binge drinking. The unexcused absence began on July 5, and

4

Sloop also claims that the district court's interpretation of 29 C.F.R. § 825.114(d) conflicts with the provisions of the FMLA guaranteeing unpaid leave for treatment of this serious health condition. See 29 U.S.C.A. § 2612(a). We disagree.

The FMLA does not explicitly state whether alcoholism is a health condition even covered by the statute. Instead, when the FMLA was passed, Congress delegated to the Department of Labor the responsibility of defining FMLA's broad terms. See 29 U.S.C.A. § 2654. Thus, when interpreting the FMLA, we give controlling weight to regulations that speak to issues on which the statute is silent unless such regulations are arbitrary, capricious, or manifestly contrary to the statute. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984).

Other than Sloop's bare allegation that the exclusion of treatment necessitated by the use of alcohol from the coverage of the FMLA is contrary to the intent of Congress, Sloop fails to demonstrate why controlling weight should not be accorded 29 C.F.R.§ 825.114(d). There is no evidence that Congress intended the FMLA to cover medical leave precipitated by substance abuse without regard for the personal responsibility of the employee. To the contrary, Congress intended that the FMLA be "`based on the same principle[s] as . . . other labor laws that establish minimum standards for employment.'" Manuel v. Westlake Polymers Corp., 66 F.3d 758, 763 (5th Cir. 1995) (quoting a Senate report). Viewing alcoholism in the context of labor laws such as the Americans with Disabilities Act and the Rehabilitation Act, this Court has recognized that while alcoholic employees in an at-will employment context are protected from adverse employment actions based upon their medical condition, the misconduct arising from their use of alcohol has never been protected. See Little v. Federal Bureau of Investigation, 1 F.3d 255, 259 (4th Cir. 1993) (Rehabilitation Act). Finding that this regulation, as correctly inter-

_____

hence is relevant for determining whether Sloop was entitled to leave starting the first day he was unable to report. Sloop's argument that his July 5 absence was excused by Wagoner is unavailing. Swift's warning letters and his deposition testimony make clear that Swift had the greater decision-making ability under the leave policy.

5

preted by the district court, is a permissible construction of the FMLA, we give it controlling weight.

Accordingly, we affirm the district court's grant of summary judgment to ABTCO and its denial of Sloop's motion for summary judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6