**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2065**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES EDGAR MUNSON,

Movant - Appellant,

and

REAL PROPERTY LOCATED AT 6124 MARY LANE DRIVE, SAN DIEGO, CALIFORNIA,

Defendant,

and

ANN MUNSON,

Claimant.

**No. 08-2159**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANN MUNSON,

Claimant - Appellant,

and

REAL PROPERTY LOCATED AT 6124 MARY LANE DRIVE, SAN DIEGO, CALIFORNIA,

        Defendant,

        and

JAMES EDGAR MUNSON,

        Movant.

------------------------

THOMAS EDWARD VANDERBLOEMEN,

        Amicus Supporting Appellant.

---

**No. 08-4326**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JAMES EDGAR MUNSON,

        Movant - Appellant,

    and

REAL PROPERTY LOCATED AT 6124 MARY LANE DRIVE, SAN DIEGO, CALIFORNIA,

        Defendant,

    and

ANN MUNSON,

        Claimant.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:03-cv-00580-GCM; 3:03-cv-00580-GCM-1)

Argued: January 24, 2012                    Decided: April 17, 2012

Before SHEDD, DAVIS, and DIAZ, Circuit Judges.

No. 08-2065 dismissed; Nos. 08-2159 and 08-4326 affirmed by unpublished opinion. Judge Davis wrote the opinion, in which Judge Shedd and Judge Diaz joined.

**ARGUED:** Thomas E. Vanderbloemen, GALLIVAN, WHITE & BOYD, PA, Greenville, South Carolina, for Appellants and Amicus Supporting Appellant. William A. Brafford, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

These consolidated appeals arise out of the civil forfeiture of real property located at 6124 Mary Lane Drive in San Diego, California ("the Property"). When the Government filed its complaint for forfeiture in rem on December 3, 2003, Claimant-Appellant Ann Munson ("Ann") and her son, Movant-Appellant James Edgar Munson ("James"), held joint title to the Property. The Government initiated forfeiture proceedings under 18 U.S.C. § 981 and 21 U.S.C. § 881 on the basis that James had used the Property in conjunction with drug trafficking and money laundering crimes. After Ann filed a verified claim asserting an interest in the Property, she and the Government filed cross-motions for summary judgment as to the forfeitability of her interest. The district court granted summary judgment to the Government, denied Ann's motion for summary judgment, and entered a final judgment of forfeiture. The district court also denied several pro se motions that James had filed while incarcerated in an attempt to assert a claim to the Property, as well as his motion for reconsideration of the same.

Ann and James individually noted appeals from the district court's order granting summary judgment, which were docketed as No. 08-2159 and No. 08-2065, respectively. James also noted an appeal from the district court's denial of his motion for reconsideration, which was docketed as No. 08-4326. For the

4

reasons that follow, we dismiss No. 08-2065, affirm the district court's grant of summary judgment to the Government as to the forfeiture of Ann's property interest in No. 08-2159, and affirm the district court's denial of James's motion for reconsideration in No. 08-4326.

I.

On July 17, 1997, Ann Munson purchased the Property, a house located at 6124 Mary Lane Drive in San Diego, California. Although she was the sole owner of the Property, Ann allowed her son, James Edgar Munson, and several other renters to live there while she lived elsewhere. Ann explains that James had recently graduated from college and she wanted to provide him with a place to live that he might one day own. In October 1997, James and several other individuals began packaging marijuana at the Property for shipment to North Carolina and various other locations. They also used the landline telephone at the Property for calls relating to the drug trafficking operation and accepted drug payments there. It is undisputed that all use of the Property in connection with James's criminal drug activity had ceased by September 1999. Shortly thereafter, on October 12, 1999, Ann conveyed the Property to James by quitclaim deed and gifted the equity to him.

Thereafter, in consequence of an ongoing investigation of the drug trafficking operation, James was arrested on May 15, 2001, and subsequently indicted in Charlotte, North Carolina. Ann contends, and the Government does not dispute, that she was unaware of any criminal activity at the Property until the time of James's arrest. On January 16, 2002, during the pendency of the criminal charges against him, James executed and recorded a grant deed conveying the Property to him and Ann. In addition, they executed a deed of trust in favor of IndyMac bank securing a $240,000 indebtedness. Ann contends that she became co-owner of the Property at this point in order to refinance the mortgage to protect her financial interest following James's arrest and ensuing unemployment.

James was convicted in May 2003 and sentenced in December 2003.[1] After James's conviction but prior to his sentencing, the Government filed a civil forfeiture complaint in the U.S. District Court for the Western District of North Carolina under the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-

---

[1] James was prosecuted in the Western District of North Carolina, No. 3:01-cr-66-2-V, and was initially sentenced to 121 months' imprisonment. On appeal, a panel of this court remanded for resentencing. United States v. Munson, 181 F. App'x 368 (4th Cir. 2006). The district court resentenced James to eighty-seven months' imprisonment and we affirmed. United States v. Munson, 299 F. App'x 297 (4th Cir. 2008). James was released from prison on September 16, 2009.

185, 114 Stat. 202 (2000) ("CAFRA"). The complaint sought forfeiture of all rights, title, and interest in the Property under 18 U.S.C. § 981(a)(1)(A) on the basis that the Property was involved in James's money laundering conspiracy, a violation of 18 U.S.C. § 1956(h), and under 21 U.S.C. § 881(a)(7) on the basis that the Property was used to commit, or to facilitate the commission of, James's drug conspiracy, a violation of 21 U.S.C. § 846. The complaint listed Ann and James, the Property owners of record at the time of the filing of the complaint, as those with potential claims of interest in the Property. The Government posted notice of the forfeiture action at the Property, served Ann, published notice in The Mecklenburg Times and The San Diego Commerce newspapers, and attempted to serve James by certified mail at his place of incarceration and through his attorney in the related criminal case. The Government also filed a notice of lis pendens in California.

Ann, acting through counsel, filed a claim to the Property, asserting that she was "a co-owner of the defendant property pursuant to a Grant Deed filed on 16 January 2002" and attached a copy of the deed.[2] J.A. 115. In her answer, Ann asserted a

---

[2] Ann initially filed her notice of claim on January 20, 2004 and her answer on February 8, 2004. Approximately eight months later, the Government filed a motion to strike Ann's claim on the basis that it failed to comply with procedural requirements in the Supplemental Rules for Certain Admiralty and (Continued)

7

defense alleging that she originally purchased the Property in 1997; that she conveyed it to James in 1999 but continued to provide funds toward mortgage payments; that James conveyed the Property to her and himself on January 16, 2002; and that she had no knowledge of any illegal activities at the property and was therefore an innocent owner.

James did not timely file a claim to the Property, ostensibly because the Government's attempts at service of notice of the forfeiture action through prison officials at the Mecklenburg County Jail and James's criminal attorney had been unsuccessful. Although James eventually learned of the pending forfeiture through his mother, who had power of attorney over his affairs while he was incarcerated, he avers that he erroneously believed her attorney was also representing his interests.

---

Maritime Claims ("Supplemental Rules") because it was not verified by her and did not identify her interest in the defendant Property. Ann did not respond to this motion and the court struck her claim. Ann subsequently filed a motion for relief explaining that she had never received the Government's motion to strike. The court found that Ann's failure to respond was justified and granted the motion. Ann subsequently filed a response to the Government's motion to strike, as well as a motion for leave to file a verified claim. The district court permitted Ann to file a claim, reasoning that no prejudice to the Government would result. Ann filed the operable verified claim on September 22, 2005.

Ann and the Government filed cross-motions for summary judgment. After Ann and the Government moved for summary judgment, but before the district court ruled on the motions, James filed several pro se pleadings in the district court asserting procedural arguments relating to alleged deficiencies in the Government's service of notice.[3] The district court denied James's motions, finding that he had failed to timely file a claim and could not credibly assert that he was an innocent owner of the Property. James sought reconsideration, which the district court also denied. James's timely appeal from the district court's denial of his motion for reconsideration is now before us.[4]

Ruling on the cross-motions for summary judgment, the district court first determined that the Property was subject to forfeiture because it had undisputedly been used to facilitate a criminal drug conspiracy. The court then found that, in order to

---

[3] James filed motions to stay, to set aside default judgment, and for miscellaneous relief. The district court did not rule on James's motion to set aside default judgment; however, no default judgment was entered, so the issue is moot.

[4] Even if the district court's order denying James's motion for reconsideration was an interlocutory order from which no appeal lies, James's appeal of that order is merged into the final judgment and is open to review on his appeal from that judgment. See Hellerstein v. Mr. Steak, Inc., 531 F.2d 470, 474 (10th Cir. 1976) ("The general rule is that an interlocutory order from which no appeal lies is merged into the final judgment and open to review on appeal from that judgment.").

establish that her current ownership interest in the Property is not subject to forfeiture as a matter of law, Ann had to prove that she had been an innocent owner under 18 U.S.C. § 983(d)(3) when she acquired a partial ownership interest by way of the 2002 grant deed. The district court found that Ann could not establish innocent ownership under § 983(d)(3) as a matter of law because, given that James had gifted an interest in the Property to her after his arrest, she was neither a bona fide purchaser for value nor was she without knowledge and reasonably without cause to believe that the Property was subject to forfeiture. Accordingly, the district court entered an order granting the Government's motion for summary judgment and denying Ann's motion for summary judgment. James timely appealed the order.

Meanwhile, Ann moved to alter and amend the order on the basis that the district court had erroneously stated that James's role in the drug conspiracy ended in 2000, while the Government conceded that he withdrew from the conspiracy no later than September 1999. The district court granted Ann's motion in part, amended its order to reflect that James had participated in the conspiracy "from October 1997 [through] at least September 1999," and entered the amended order granting summary judgment to the Government. J.A. 385. Ann timely appealed from the amended order. The district court entered the

10

final judgment of forfeiture in rem on October 22, 2008.[5] Neither James nor Ann appealed the final forfeiture order. The Property was sold on August 1, 2009, for $332,000. Approximately $264,304 was applied to pay off the mortgage and other costs. The balance of $67,696 is being held pending resolution of these consolidated appeals.

## II.

### A.

We begin by addressing James's contention that the district court erred in denying his motion for reconsideration. He argues that, due to deficiencies in service, the Government failed to provide him with adequate notice of the forfeiture proceedings. James argues in the alternative that, even if he had been properly served, the district court should have permitted him to file an out-of-time claim on the basis of excusable neglect. Legal questions concerning insufficient service of process are reviewed de novo, while any related factual findings are reviewed for clear error. See United States v. Elmes, 532 F.3d

---

[5] Once this judgment was entered, the earlier notices of appeal by James and Ann, even though premature, are deemed timely appeals of a final order for purposes of appellate jurisdiction. See In re Bryson, 406 F.3d 284, 287-89 (4th Cir. 2005). The district court had jurisdiction over the forfeiture action under 28 U.S.C. §§ 1331 and 1335. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294.

11

1138, 1141 (11th Cir. 2008). A district court's decision to deny permission to file a claim "out of time" in forfeiture proceedings is reviewed for abuse of discretion. United States v. Borromeo, 945 F.2d 750, 754 (4th Cir. 1991).

The district court stated in its Order denying James's motion for reconsideration that:

> Mr. Munson alleges that his substantive and procedural due process rights have been violated. But Mr. Munson neither filed a timely claim in this matter, nor can he claim to be an innocent owner of the property, therefore, he is not a party to this case. Further, since he is not a party to this case, he has no due process rights in this matter.
>
> Mr. Munson has filed numerous petitions before this Court, all of which have been denied for lack of standing. Similar to these previous motions, Mr. Munson fails to assert any basis of standing in his most recent motion, therefore his motion for reconsideration is DENIED.

J.A. 330. It appears from the district court's admonition that James "neither filed a timely claim, nor can he claim to be an innocent owner of the property," and its references to James's "fail[ure] to assert any basis of standing," that the court collapsed Article III standing requirements with the procedural requirements for statutory standing under CAFRA and the merits of the "innocent owner" affirmative defense to forfeiture codified at 18 U.S.C. § 983(d).[6]

---

[6] In other words, James had a due process right to notice of the forfeiture action by virtue of his facially colorable (Continued)

12

In order to contest a government forfeiture action, a claimant must have the Article III standing required for any action brought in federal court. United States v. $515,060.42 in United States Currency, 152 F.3d 491, 497 (6th Cir. 1998). In order to establish Article III standing, a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property. See, e.g., United States v. 16510 Ashton, 47 F.3d 1465, 1470 (6th Cir. 1995); United States v. $321,470.00 in United States Currency, 874 F.2d 298, 302 (5th Cir. 1989) (explaining that a claimant need not prove the merits of his underlying claim to achieve standing, but he must claim a facially colorable interest in the seized property); United States v. $122,043.00 in United States Currency, 792 F.2d 1470, 1473 (9th Cir. 1986). Both Ann and James have Article III standing in this case given that they were the owners of record when the Government filed its forfeiture complaint and during the pendency of the subsequent forfeiture proceedings until the

---

ownership interest in the Property arising from the 2002 deed. The question whether James filed a timely claim (a prerequisite to statutory standing) is not properly determined without reference to whether the Government provided adequate notice, thereby triggering the statutory requirement that James file a verified claim within fourteen days after execution of process, as required under Supplemental Rule C(6)(A)(i)(A).

13

sale of the Property. Accordingly, James was entitled to notice of the forfeiture proceedings against the Property.

The Government contends that it satisfied all statutory and constitutional notice requirements in this case by sending copies of the complaint and related papers by certified mail addressed to James at the Mecklenburg County Jail and to Claire Rauscher, Esq., James's attorney in the related criminal case, at her office. James avers that neither attempt at notice actually reached him. The Government does not assert that James actually received either mailing, but rather emphasizes that actual notice is not required. For the reasons that follow, we find that James received adequate notice of the forfeiture action and that his attempt to assert a claim by filing a motion to stay on April 11, 2007, and each of his subsequent attempts, were untimely.

CAFRA provisions governing civil forfeiture of real property provide that "[t]he Government shall initiate a civil forfeiture action against real property by," inter alia, "serving notice on the property owner, along with a copy of the complaint." 18 U.S.C. § 985(c)(1)(C); see also Fed. R. Civ. P., Supp. R. G(3)(a) (providing that "[i]f the defendant is real property, the government must proceed under 18 U.S.C. § 985"). In order to comport with constitutional due process requirements, the Government's service of notice must be

14

"reasonably calculated, under all the circumstances, to apprise the petitioner of the action." Dusenberry v. United States, 534 U.S. 161, 173 (2002) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)) (quotation marks omitted). This analytical framework presents a "straightforward test of reasonableness under the circumstances," id. at 167, and does not require actual notice, id. at 170-71.

In Dusenberry, the Supreme Court held that the Government satisfied this "straightforward test of reasonableness" when it sent notice of forfeiture proceedings by certified mail to the property owner's place of incarceration. 534 U.S. at 172-73. The Government relies upon Dusenberry for the proposition that its attempt to serve notice on James by sending the complaint via certified mail to the Mecklenburg County Jail was per se constitutionally sufficient, irrespective of whether James actually received notice. This argument fails to recognize, however, that the particular details of the correctional mail system at issue in Dusenberry were critical to the Court's analysis.[7] In this case, the Government concedes that officials

---

[7] The correctional facility in Dusenberry had the following standard mail-delivery practices: A mailroom staff member would sign for the certified letter at the post office and it would be entered into a logbook at the prison; a different staff member, one assigned to the section of the prison in which the inmate lived, would sign the letter out from the mailroom; and finally a staff member would deliver the letter to the prisoner during (Continued)

at the Mecklenburg County Jail refused delivery of the forfeiture complaint in keeping with the institution's general policy of refusing letters sent by certified mail. In light of this policy, the Government's attempt to serve James by certified mail addressed to him at the jail was not "reasonably calculated, under all the circumstances" to apprise him of the forfeiture action. See Nunley v. Dep't. of Justice, 425 F.3d 1132, 1137 (8th Cir. 2005) ("[T]here is no irrebuttable presumption that a prison's internal mail-distribution procedures are reasonably calculated to provide notice.").

We need not decide whether the Government's attempt to serve James at his place of incarceration alone passes constitutional muster, however, because the Government also sent notice of the complaint by certified mail to James's attorney in the related criminal case[8] and James had actual knowledge of the

_____

"mail call." See 534 U.S. at 168-69. The Court determined that the procedures established by the prison were sufficient for due process purposes, but never stated that such procedures were constitutionally obligatory. Id. at 172-73.

[8] Although we recognize that Supplemental Rule G was not in effect when the Government attempted to serve notice in this case, we note that the rule now clearly provides that notice "may be sent to . . . the attorney representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." Fed. R. Civ. P., Supp. R. G(4)(b)(iii)(B) (effective Dec. 1, 2006).

16

forfeiture proceedings more than one year prior to filing his initial pro se motion seeking to assert an interest in the Property. See, e.g., United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice.") (citations omitted). In a letter from James to Ann's attorney dated February 2, 2006, he mentioned "the civil suit on the house," J.A. 279, indicating that he had knowledge of the forfeiture case no later than that date. Nevertheless, James did not file his first pro se motion asserting a claim to the Property until April 11, 2007.

James argues that, even if he received adequate notice, the district court should have allowed him to file an out-of-time claim on the basis of excusable neglect. Under Borromeo, "[e]ven where a claimant is properly served, or perhaps has 'actual notice,' a court may allow a claim to be filed out of time on a showing of excusable neglect. Fed. R. Civ. P. 6(b)(2)." 945 F.2d at 753. Relevant factors include:

> when the claimant became aware of the seizure, whether the claimant was properly served, whether the government would be prejudiced, whether the government encouraged the delay or misguided the plaintiff, whether the claimant informed the government and the court of his interest before the deadline, whether the claimant had expended resources preparing for trial,

17

> the claimant's good faith, the claimant's health problems, whether the government complied with procedural rules, and whether the claimant was acting pro se.

Id. (citations omitted). While certain of these factors arguably weigh in favor of allowing James to file an out-of-time claim, the district court did not abuse its discretion in denying James's motion for reconsideration where it correctly concluded that James could not prevail on the merits. See, e.g., United States v. Indoor Cultivation Equip., 55 F.3d 1311, 1313 (7th Cir. 1995) (finding that to prevail upon a motion to set aside a default judgment in a civil forfeiture case, a party must show "the existence of a meritorious defense to the original action") (citations omitted). James first acquired an ownership interest in the Property in 1999, after he had himself used it to facilitate drug trafficking and money laundering. Thus, he does not have a colorable innocent owner defense to forfeiture under either 18 U.S.C. § 983(d)(2) or (d)(3). Accordingly, we affirm the district court's denial of James's motion for reconsideration in No. 08-4326.

Given that James failed to timely file a verified claim to the Property and is not entitled to file an out-of-time claim, he lacks statutory standing to challenge the district court's Order granting summary judgment to the Government. See Fed. R. Civ. P., Supp. Rule C(6); United States v. United States

18

Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir. 1985) ("Once the procedural requirements of Rule C(6) are met, a claimant has standing to defend the forfeiture."). Accordingly, in considering whether the district court erred in granting summary judgment to the Government, we need only address whether the undisputed facts establish that Ann's property interest is subject to forfeiture as a matter of law.

B.

Ann contends that she is entitled as a matter of law to the "innocent owner" defense to forfeiture in 18 U.S.C. § 983(d)(2) on the basis that she was the sole owner of the Property for the duration of the illegal drug activity giving rise to forfeiture and was unaware of this conduct, and that the district court accordingly erred in granting summary judgment to the Government. Ann argues in the alternative that even if she may rely only upon her current (joint) ownership interest arising from the 2002 grant deed, she is nonetheless an innocent owner as a matter of law under § 983(d)(3) because she took as a bona fide purchaser for value without knowledge or reason to know of the illegal activity giving rise to forfeiture. The Government contends that the district court correctly applied § 983(d)(3), rather than § 983(d)(2), to determine on the basis of the undisputed facts that Ann is not innocent owner as a matter of law.

19

We review the district court's grant of summary judgment in a civil forfeiture action de novo. See United States v. Kanasco, Ltd., 123 F.3d 209, 210 (4th Cir. 1997). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

CAFRA governs civil forfeitures to the United States. See 18 U.S.C. § 981. Section 983 of Title 18 sets forth rules governing civil forfeiture proceedings and delineates the circumstances in which property described in § 981 cannot be forfeited. See 18 U.S.C. § 983. The initial burden of proof in a civil forfeiture action "is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." Id. § 983(c)(1). If the government's theory is that the property was used in or facilitated the commission of a criminal offense, as in this case, the government must also prove that there was a substantial connection between the property and the offense. Id. § 983(c)(3). Section 983(d)(1) sets forth the basic principle that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," and further provides that the claimant shall have the burden of proving innocent ownership by a

preponderance of the evidence. Id. § 983(d)(1). Thus, the Government has the initial burden of proving that the property is subject to forfeiture and the claimant bears the burden on the affirmative defense of innocent ownership.

Ann does not dispute that the Property is subject to forfeiture on the basis that James and others used the house to package marijuana in connection with the drug trafficking conspiracy.[9] See United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010) (stating that substantial connection may be established "by showing that use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance") (citation and internal quotation marks omitted). Thus, the district court did not err in concluding that the Property was subject to forfeiture (i.e., that the Government established its prima facie case), and the burden of proof shifted to Ann to establish the affirmative defense of innocent ownership.

The statutory innocent owner defense in CAFRA is divided into two parts, so that property interests in existence at the

---

[9] Although the district court did not expressly find that there was a "substantial connection" between the Property and the criminal activity giving rise to forfeiture, James admitted at sentencing that he and others packaged marijuana at the house and Ann has also conceded that the Property was used in drug trafficking.

time the illegal conduct giving rise to forfeiture took place ("pre-existing interests") are treated differently from property interests acquired after the illegal conduct giving rise to the forfeiture took place ("after-acquired interests"). With respect to pre-existing interests, CAFRA provides that the term "innocent owner," means an owner who

>     (i) did not know of the conduct giving rise to forfeiture; or

>     (ii) upon learning of the conduct giving rise to the forfeiture, did all that could reasonably be expected under the circumstances to terminate such use of the property.

18 U.S.C. § 983(d)(2)(A). Regarding after-acquired interests, CAFRA provides that the term "innocent owner" means a person who, at the time that person acquired the interest in the property

>     (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and

>     (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A).

Ann asserts that she is an innocent owner under § 983(d)(2)(A)(i)-(ii) because she has a pre-existing interest arising from her sole ownership of the Property from July 1997 until October 1999, the undisputed period of James's illegal drug trafficking and money laundering activity, and because it is undisputed that she had no knowledge of the conspiracy during

22

that time. The district court recognized that "[t]he conditions one must meet to be an innocent owner depend on whether the claimant's property interest was acquired before or after the illegal conduct giving rise to the forfeiture took place," but reasoned that Ann "clearly gave up her legal interest in existence at the time of the initial criminal activity at the property because she quitclaimed the deed to [James] in 1999." United States v. Real Prop. Located at 6124 Mary Lane Dr., San Diego, Cal., No. 3:03-cv-580, 2008 WL 3925074, at * 2 (W.D.N.C. Aug. 20, 2008). Accordingly, the court determined that, in order to establish innocent ownership, Ann must satisfy the conditions set forth in § 983(d)(3). We agree.

As a threshold requirement under § 983(d), Ann must establish that she is an "owner" of the defendant property.[10] Indeed, "[i]f the claimant cannot establish that she has the required ownership interest, then her innocence is irrelevant." Stefan D. Cassella, The Uniform Innocent Owner Defense to Civil

_____

[10] The requirement that a claimant establish an ownership interest in the defendant property as part of her affirmative defense to forfeiture is distinct from her duty to establish that she has standing to contest the forfeiture. As set forth above, to establish standing, a claimant need only show that she has a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement under Article III of the United States Constitution. See $515,060.42 in United States Currency, 189 F.3d at 35. Thus, a claimant may have standing without being an owner of the property.

23

Asset Forfeiture, 89 K.Y. L. J. 653, 672 (2001) (internal citations omitted). Section 983(d)(6)(A) provides that an "owner" is "a person with an ownership interest in the specific property [under state law] sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A) (emphasis added).[11] It is unsurprising, then, that in her verified claim filed on September 22, 2005, Ann identified the deed of January 16, 2002 as the legal basis for her asserted co-ownership of the Property. As the Government points out, "even at the foundational level of state property law, neither James nor Ann has showed a colorable existing ownership interest in the defendant property based on the 1997 grant deed." Govt's Br. at 32. Rather, as the district court found, this ownership interest was extinguished when Ann quitclaimed the Property to James on September 21, 1999, well before the Government filed its forfeiture complaint. Accordingly, in asserting the affirmative defense of innocent ownership, Ann must rely on the

---

[11] Conversely, an "owner" does not include "(i) a person with only a general unsecured interest in, or claim against, the property estate of another; (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or (iii) a nominee who exercises no dominion or control over the property." 18 U.S.C. § 983(d)(6)(B).

24

partial ownership interest James conveyed to her by way of the 2002 grant deed.

Given that the 2002 deed gave rise to "a property interest acquired after the conduct giving rise to the forfeiture has taken place," Ann must establish innocent ownership under 18 U.S.C. § 983(d)(3). As set forth above, § 983(d)(3)(A) requires that Ann establish (i) she was a bona fide purchaser for value ("BFP") and (ii) she did not know and was reasonably without cause to believe that the property was subject to forfeiture when she acquired a partial ownership interest in 2002. "Bona fide purchaser for value" is not defined in CAFRA. Accordingly, courts often turn to the definition in the criminal forfeiture statute, which "includes all persons who give value . . . in an arm's length transaction with the expectation that they would receive equivalent value in return." 18 U.S.C. § 853(n)(6)(b). Based upon the undisputed facts in the record, Ann cannot satisfy this standard.

The record indicates that Ann did not give value for her partial ownership interest in the Property. Tellingly, the 2002 deed of trust states that it was a "GIFT-NO CONSIDERATION."[12] In

---

[12] The word "GIFT" was handwritten, while "NO CONSIDERATION" was typed. The deed also contains boilerplate language stating "FOR A VALUABLE CONSIDERATION," but the handwritten "GIFT" notation clearly indicates the true nature of the transaction.

addition, Ann testified at her deposition that she did not remember discussing payment with James at the time of the transaction. Although she apparently often gave or loaned her son money, there is no evidence that any of these gifts or loans were part of a bargained-for exchange related to the conveyance of an interest in the Property in 2002. Ann concedes that a BFP must part with something of value in exchange for the property, but argues that she satisfied this requirement by co-signing as a borrower on the Deed of Trust for $240,000, and thereby becoming jointly liable for that amount. The Government argues that Ann's undertaking of this legal obligation does nothing to demonstrate that the conveyance was an arm's length transaction and, in fact, supports an opposite conclusion. See Govt's Br. at 42 ("Ann's liability on the IndyMac loan confirms that there was no arm's length bargain with her son, since she became jointly liable for a $240,000 debt without receiving any of the additional funds that were taken out of the equity in the house; all the money went to him"). We agree with the district court that Ann's assumption of joint liability for the outstanding mortgage debt does not establish that she gave value in an arm's length transaction. Rather, the ineluctable inference from the undisputed facts is that like most any loving parent, she was doing her level best to help her offspring, who faced felony prosecution in federal court. Accordingly, Ann is unable to

26

establish that she is a BFP and cannot prevail on the innocent owner defense as a matter of law.

Having concluded that the district court correctly found that Ann was not a BFP when she acquired her current ownership interest in the Property by way of the 2002 grant deed, we need not decide whether she "did not know and was reasonably without cause to believe that the property was subject to forfeiture," as required under 18 U.S.C. § 983(d)(3)(A)(ii).

## III.

For the reasons set forth herein, James's appeal from the district court's grant of summary judgment, docketed as No. 08-2065, is dismissed. Ann's appeal from the district court's grant of summary judgment, docketed as No. 08-2159, and the district court's denial of James's motion for reconsideration, docketed as No. 08-4326, are affirmed.

No. 08-2065 <u>DISMISSED</u>
Nos. 08-2159 and 08-4326 <u>AFFIRMED</u>